[No. D007231. Fourth Dist., Div. One. May 11, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY DRUMMOND ANDERSON, Defendant and Appellant.

COUNSEL

David M. McKinney, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Nancy L. Palmieri and Holly D. Wilkens, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FROEHLICH, J.**—Jeffrey Drummond Anderson was convicted by a jury of two counts of receiving stolen property. His appeal is directed primarily to alleged error in instructing as to the evidentiary effect of defendant's possession of recently stolen property. Anderson contends that the instruction in its present CALJIC-approved form improperly and unconstitutionally shifts burdens of proof, that there was insufficient evidence to warrant giving the instruction, and that errors were made in the form in which the instruction was given. Finding the instruction to be an accurate statement of law, and concluding it was supported by substantial evidence and in a form warranted, we affirm the judgment.

I

FACTS

Anderson, a blond Caucasian, was 21 years old at the time of his arrest. He had attended high school in Orange County, and had in his possession paperwork pertaining to an application to attend college in the State of Washington. Although unemployed at the time of his arrest, he had previously worked as a part-time tutor and a full-time manager of a Domino's Pizza store. His father, who testified on his behalf at the trial, was a private investigator and former FBI agent.

The arrest took place on May 20, 1987, at 3 a.m., at the Aliso Creek rest area, off interstate highway I-5, in San Diego County. Attention had been focused on Anderson's car by two border patrol agents because it was a type of vehicle often stolen. A California highway patrolman was called to assist, and the three uniformed peace officers drew near the car. Anderson could be seen sleeping in a reclining position in the interior of the vehicle. The officers awakened Anderson by tapping on the vehicle above his head and yelling at him from the driver's side of the car.

Upon awakening, Anderson sat up and scooted into the driver's seat, suggesting to the officers an attempt to start the car. He did not activate the vehicle, however, but remained sitting, unresponsive to the officers' instructions, for a period of approximately two minutes. Ultimately Anderson unlocked the car door. Even though asked at least twice to step out of the car, he failed to respond, and was finally pulled out by the police officer. Anderson gave no evidence of being under the influence of alcohol or drugs, and seemed to the officers alert. Notwithstanding, he made no response to their inquiries, failing to identify himself or respond in any manner. Even when his identification was discovered by means of papers in the car, Anderson refused to acknowledge his name.

Subsequently, in a brief conversation with one of the border patrol agents, Anderson stated that the vehicle and its contents belonged to him, and that he would consent to the agent's search of items in the vehicle. At the time of this search, and after impound, the vehicle was found to contain a video Camcorder, stolen in Tustin, California, on January 6, 1987. The vehicle was determined to have been stolen from a Mr. Soo in Irvine, California on April 24, 1987. At the time of Anderson's arrest Mr. Soo's briefcase with some of his personal papers was also found inside the car. In addition, numerous key rings with keys were found inside the car. While the keys appeared to be for the same make of vehicle, they did not fit either the ignition or doors of Anderson's car.

Anderson testified in his own behalf. He stated that at the time of his arrest he was in the process of moving from Southern California to Washington. He had no formal address. Prior testimony by the officers suggested Anderson had been living in the vehicle. Anderson testified he had purchased the Camcorder for $950 from a friend, and had borrowed the vehicle from another friend. Although Anderson recited the names of these two friends, he did not relate their place of residence or other identifying information. Neither of the friends appeared at trial. Although Anderson claimed he had a receipt for the Camcorder in the vehicle, such was never found, and no other documentary support for Anderson's testimony was produced. No vehicle registration was found in the car.

## II

### APPELLANT'S CONTENTIONS

Anderson argues that the evidence was insufficient to sustain the jury verdict. The more focused grounds for appeal, however, relate to the trial court's giving of CALJIC No. 2.15, the instruction which advises the jury as to the evidentiary effect of proof of a defendant's possession of recently

stolen property. As to this instruction, Anderson contends: 1. The instruction should not have been given because it erroneously assumed the existence of a supporting fact (i.e., that the stolen property was "recently" stolen) and deprived the jury of the opportunity to determine this fact.

2. It was error for the court to read the instruction in its entirety, including bracketed portions, because there was no evidence sufficient to raise the issues addressed by the bracketed portions.

3. The present form of CALJIC No. 2.15 is constitutionally infirm.

III

DISCUSSION

A. *Appropriateness, Generally, of CALJIC No. 2.15*

The instruction given by the court was as follows: "Conscious possession of recently stolen property is not of itself sufficient to permit an inference that the defendant is guilty of the crime of receiving stolen property.

"Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not in and of itself be sufficient to warrant an inference of guilt.

"As corroboration, you may consider the attributes of possession—time, place, and manner, that the defendant had and (*sic*) opportunity to commit the crime charged, the defendant's conduct, his false or contradictory statements, if any, and or other statements he made with reference to the property, a false account of how he acquired possession of the stolen property, and other evidence which tends to connect the defendant with the crime charged."[1]

■ Proof of the crime of receiving stolen property requires establishing that the property in question was stolen, that the defendant was in possession of it, and that the defendant knew the property to be stolen. (Pen. Code, § 496, subd. 1; *People v. Vallee* (1970) 7 Cal.App.3d 167, 171-172 [86

---

[1] The wording of CALJIC No. 2.15 has been changed slightly in the 1988 version. The first sentence of the 1988 version reads, "Conscious possession of recently stolen property is not by itself sufficient to permit an inference that the defendant _____ is guilty of the crime of [receiving stolen property]." The third sentence reads, "However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt."

Cal.Rptr. 475].) A long line of authority, culminating in *People v. McFarland* (1962) 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449], establishes that proof of knowing possession by a defendant of recently stolen property raises a strong inference of the other element of the crime: the defendant's knowledge of the tainted nature of the property. This inference is so substantial that only "slight" additional corroborating evidence need be adduced in order to permit a finding of guilty. (*Id*. at p. 754.) It is this principle of law which is incorporated in CALJIC No. 2.15.

■ There is no question but that the phrase "recently stolen" is a key portion of the legal principle and the instruction. Catching a defendant with the goods in possession shortly after a theft rationally suggests a connection to and knowledge of the crime; while the passage of a long period between the theft and the defendant's possession of the stolen property weakens any inference of guilty knowledge. (See *People v. Lopez* (1954) 126 Cal.App.2d 274, 278 [271 P.2d 874].) Appellant contends that no reasonable construction of the evidence in this case results in a conclusion that the property in question was "recently stolen." Since facts supporting the use of the instruction did not exist, argues appellant, it was error to give such instruction. Since the intervals between the thefts and the arrest in this case were approximately four and a half months and one month respectively, appellant requests we declare, as a matter of law, that these time intervals cannot be construed as "recent."

Appellant concedes there is no specific authority as to what time intervals may be embraced within the term "recent." Lacking legal definition, appellant cites as instructive a number of examples of time periods which have been confirmed as within the period "recent."[2] None of these cases, however, attempts definition of the maximum time period which could be construed by a jury to be "recent." While we have found no authority specifically in point, *People v. Lopez, supra,* 126 Cal.App.2d 274, 278 is instructive. The instruction with which we deal was not at issue in that case because the case was tried to a judge, no jury instructions being given. The Court of Appeal sustained a conviction, however, by inferring knowledge of the stolen nature of the goods by virtue of possession of same accompanied

---

[2] Exemplary of the short period of time which appellant believes only appropriate for inclusion in the concept of "recent" are the periods referenced in *People v. Hallman* (1973) 35 Cal.App.3d 638, 640 [110 Cal.Rptr. 891] (within 25 hours); *People v. Banks* (1976) 62 Cal.App.3d 38, 40-41 [132 Cal.Rptr. 751] (within one hour); *People v. Clark* (1953) 122 Cal.App.2d 342, 345 [265 P.2d 43] (about 12 hours); *People v. Reynolds* (1957) 149 Cal.App.2d 290, 295 [308 P.2d 48] (six days); *People v. Conrad* (1954) 125 Cal.App.2d 184, 185 [270 P.2d 31] (following day); *People v. Owens* (1947) 79 Cal.App.2d 290, 295 [308 P.2d 48] (morning after burglary discovered); *People v. Smith* (1950) 98 Cal.App.2d 723, 724 [221 P.2d 140] (14 hours); *People v. Citrino* (1956) 46 Cal.2d 284, 286 [294 P.2d 32] (within a few days).

by inconsistent and misleading explanations by the defendant and testimony by others that he bought and sold stolen property when he had the opportunity. The time period between theft and possession was *nine months*. Acknowledging that the rule permitting an inference of knowledge is generally based upon possession of the articles "soon" after they are stolen, the court nevertheless held the inference appropriate. The longer period of time, the court held, merely weakens the inference of guilty knowledge. (*Id.* at p. 278.)

We believe that, like other factual determinations, it is for the jury to conclude what time period qualifies as "recent." We are unwilling, as apparently other courts have also been, to attempt demarcation of any bright line between "recent" and "stale" time periods. Under the circumstances of this case, we believe it to have been well within reason for a jury to have determined that possession within four and a half months, and certainly possession within approximately one month, of the theft should lead to an inference of knowledge of the stolen nature of the property.

■ Appellant further contends that the very giving of the instruction imposed upon the jury a conclusion that the property in the case qualified as "recently stolen." ■ It is the obligation of the court to instruct on all legal principles applicable to the evidence of the case. (*People* v. *Iverson* (1972) 26 Cal.App.3d 598, 604 [102 Cal.Rptr. 913]; Witkin, Cal. Criminal Procedure (1985 supp.) Trial, § 471, pp. 742-743.) When an ultimate fact finding is possible, the court must provide the instructions which relate thereto, even though the court cannot predict the final conclusion the jury may reach. ■ Necessarily, then, the court will often provide the jury with instructions which later are determined irrelevant because the jury fails to find facts upon which such instructions are premised. Recognition of this problem is provided by standard CALJIC instructions Nos. 17.30 and 17.31. These concluding instructions remind the jury that *it* is the sole determiner of fact, and caution that nothing the court has said by way of instruction or otherwise should be taken as suggestive of the existence of any fact. ■ The court gave these precautionary instructions.[3] We have no reason to believe the jury did not understand and follow all of the court's instructions. (Cf. *People* v. *Yoder* (1979) 100 Cal.App.3d 333, 338 [161 Cal.Rptr. 35].) We conclude, therefore, that nothing in the court's rendition of CALJIC No. 2.15 removed from the jury its prerogative of determining the applicability of the instruction—i.e., we must assume the jury first determined whether the property was "recently stolen," and then either utilized or did not utilize the inference provided by CALJIC No. 2.15, depending upon its foundational finding.

[3] The court gave instruction number 17.31 in the form provided in 1987. The wording of the instruction was changed in 1988.

## B. *Bracketed Portions of Instruction*

As noted above, the subject instruction suggests that conscious possession of stolen property permits an inference of guilty knowledge, but that such inference by itself is insufficient to establish guilt. Some additional corroborating evidence must be produced, although such evidence need be only "slight." The second portion of the instruction then provides examples of evidence which may be found by the jury to provide corroboration. A use instruction to CALJIC No. 2.15 states that "[t]he judge should be careful to delete any bracketed material which is not supported by the evidence." The several examples included in brackets are as follows:

the attributes of possession—time, place and manner

that the defendant had an opportunity to commit the crime charged

the defendant's conduct

his false or contradictory statements, if any

other statements he may have made with reference to the property

a false account of how he acquired possession of the stolen property

any other evidence which tends to connect the defendant with the crime charged

The court read the instruction to the jury in its entirety, including every one of the above referenced bracketed examples. Appellant cites this as reversible error, relying on *People* v. *Peters* (1982) 128 Cal.App.3d 75 [180 Cal.Rptr. 76]. *Peters,* citing *People* v. *Saddler* (1979) 24 Cal.3d 671, 681 [156 Cal.Rptr. 871, 597 P.2d 130], recites the principle that a jury should not be instructed to draw an inference from evidence if there is no such evidence in the record. It was determined in *Peters* that it was error (not, as it happens in that case, reversible error) for the court to include in its reading of CALJIC No. 2.15 the reference to "false or inconsistent statements" when there was no evidence of such. (*People* v. *Peters, supra,* at p. 85.)

The three bracketed portions of the instruction specifically denoted by appellant as having been erroneously given were (1) the reference to false, contradictory or inconsistent statements, (2) consideration of the attributes of possession—"time, place and manner," and (3) that the defendant had an opportunity to commit the crime. We find no error in the court's reference

to these assumed factual circumstances of the case, and deal with the specifics as follows:

(1) *Reference to false, contradictory or inconsistent statements.* In *Peters,* stolen property was found behind the sun visor of the defendant's car. The defendant made no statement whatsoever about the property, simply denying any knowledge of its existence in his automobile. (128 Cal.App.3d at p. 85.) Since he made no explanatory statement of any kind as to the stolen items, it was illogical and error for the court to suggest the existence of false or contradictory statements.

The evidence in our case is quite different. At least one false statement of significance stands out in the record. Anderson stated to the border patrol agent that the contents of the car belonged to him. Subsequent search revealed that at least one obvious item, Mr. Soo's briefcase, did not belong to Anderson. Circumstantial evidence of clothing and debris in the car indicated a lengthy possession of same by Anderson, suggesting likely knowledge by him of all obvious items of property in the car. The jury could well have concluded that his claim of ownership of all contents of the car was an intentionally false statement. Therefore, the court was warranted in referring to "false statements" in its instruction.

(2) *Consideration of the attributes of possession—"time, place and manner."* Appellant contends that this somewhat ambiguous reference must refer to something special about the possession which tends to show guilt—something more than the normal attributes of possession. "Time" of possession, for instance, must mean something other than "recent" or it would be a redundancy.[4] Acceptance of this argument means that, to support the bracketed charge, there must have been evidence of something unusual about the possession—something other than mere control of property which would be asserted by a legal owner.

There was ample evidence of this kind as to Anderson's possession. Keys which were found in the car did not fit it. Sleeping at 3 a.m. in a rest stop by itself may not be unusual, but when coupled with failure to respond to requests by peace officers for identification and explanation, such circumstance suggests impropriety. Possession of a $950 Camcorder by an unemployed student with no home and no apparent means of using same gives rise to at least a weak inference of stolen property. This bracketed part of the instruction was properly given.

---

[4] We refrain at this point from facetious remarks about an argument suggesting that redundancy in jury instructions (or any other aspect of legal literature, for that matter) indicates the author did not knowingly state something twice which could as well have been articulated only once.

(3) *That the defendant had the opportunity to commit the crime.* Presumably this element of the instruction would be most useful when considered in connection with facts showing the defendant to have some prior relationship to the stolen property or to the perpetrator of the theft. One can note that the stolen property originated in cities in Orange County, and that the defendant admitted having recently been in that area. Other than this somewhat tenuous circumstance, no evidence was produced at trial which obviously or significantly related to this part of the instruction. It is difficult to see, however, how the giving of this bracketed portion could have misled the jury in any way. Whether Anderson did or did not have any particular "opportunity" to receive this stolen property was not, in any sense, an issue in the case. No argument was addressed to the jury by either prosecution or defense which was influenced by this segment of the instruction. We decline to find that the giving of this segment was error, holding that at most it may have been unnecessary surplusage.

## C. Asserted Constitutional Infirmity of CALJIC No. 2.15

Appellant asks us to compare prior versions of this instruction with the form in use since 1984, and to find that the changes made in 1984 render the instruction defective and violative of constitutional rights. We compare the parallel portions of the 1979 and 1984 versions of CALJIC No. 2.15 as follows:

| *1979* | *1984* |
| --- | --- |
| The mere fact that a person was in conscious possession of recently stolen property is not enough to justify his conviction of the crime . . . . | Conscious possession of recently stolen property is not of itself sufficient to permit an inference that the defendant is guilty . . . . |
| It is, however, a circumstance to be considered in connection with other evidence. | (No comparable sentence) |
| To warrant a finding of guilty, there must be proof of other conduct or circumstances tending of themselves to establish guilt. | Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not in and of itself be sufficient to warrant an inference of guilt. |

Anderson argues CALJIC No. 2.15, in its 1984 version, fails to meet the requirements of due process. Anderson's due process argument is two-fold. ■ First, Anderson argues the 1984 revision violates constitutional protections because the instruction (as revised) eliminates specific reference to the permissive nature of the inference to be drawn from possession of stolen property coupled with corroborating evidence, thereby effectively creating a mandatory presumption in violation of due process requirements. ■ Second, Anderson argues the 1984 revision contained linguistic modifications, regarding the nature and quality of the necessary corroborative evidence, which effectively reduced the People's burden to prove defendant's guilt beyond a reasonable doubt. We conclude the 1984 revisions to CALJIC No. 2.15 accurately synthesize the applicable evidentiary principles and do not violate due process requirements.

■ (1) *CALJIC No. 2.15, as revised in 1984, accurately states governing principles and does not create or impose any presumption of guilt in violation of due process requirements.* Anderson first contends CALJIC No. 2.15 imposes a mandatory presumption of guilt because it does not explicitly inform the members of the jury they were entitled to reject the inference (i.e., of guilty knowledge) which arose from possession of stolen property coupled with corroborative evidence.

Preliminarily, we note the instruction accurately synopsizes the thrust of the holding in *People* v. *McFarland, supra,* 58 Cal.2d 748. ■ In *McFarland,* the court noted that, while possession of recently stolen property (standing alone) is not enough to support a conviction, possession of recently stolen property is so incriminating that a jury is entitled to infer guilty knowledge and find guilt if there is even *slight* corroborating evidence tending to show guilty knowledge. (*Id.* at pp. 754-755.) The *McFarland* court approved the jury instructions given in that case, which essentially stated that (1) mere possession of recently stolen property, standing alone, was insufficient to find guilt; (2) possession, however, was a circumstance properly considered in connection with evaluating other evidence on the question of guilt or innocence; (3) some other (even slight) corroborative evidence tending to prove guilty knowledge, when coupled with possession of recently stolen property, is sufficient to sustain a conviction. (*Id.* at pp. 758-759.) Under such circumstances, the *McFarland* court declared the inference of guilt is permissible, and ". . . it is for the jury to determine whether or not the inference should be drawn in the light of all the evidence." (*Id.* at p. 755.) ■ Importantly, however, the jury instruction upheld in *McFarland* did not explicitly inform the jury that it was entitled to reject the inference, nor did the *McFarland* court intimate such a caveat was necessary.

Where an inference of guilt is merely permissive (rather than mandatory), the prosecution's use of the inference comports with due process requirements unless, under the facts of the case, there is no rational way for the jury to make the logical connection which the inference permits. (*Ulster County Court* v. *Allen* (1979) 442 U.S. 140, 157 [60 L.Ed.2d 777, 792, 99 S.Ct. 2213].)[5] That is, a permissive inference empowers the jury to credit or reject the inference based on its evaluation of the evidence, and therefore does not relieve the People of any burden of establishing guilt beyond a reasonable doubt. (See, e.g., *People* v. *Roder* (1983) 33 Cal.3d 491, 497-498 [189 Cal.Rptr. 501, 658 P.2d 1302].)

Anderson apparently argues that the 1984 revision to the instruction, by deleting the earlier language which specified ". . . [possession] is, however, a circumstance to be considered in connection with the other evidence," somehow changed the inference from a permissive to a mandatory inference. We disagree. The deletion of the above quoted language had no impact whatsoever on the permissive language of CALJIC No. 2.15.[6] The instruction remains permissive: "Conscious possession . . . is not of itself sufficient to permit an inference [of guilt]. Before guilt *may* be inferred, there must be corroborating evidence . . . ." (Italics added.) Far from compelling the jury to draw an inference, it uses *permissive* language (i.e.,

---

[5] In *Ulster County*, the court held the particular inference under consideration there was not mandatory, but was instead permissive. In reaching its conclusion, the court reviewed the instructions as a whole, none of which *explicitly* informed the jury of its right to credit or reject the inferred fact. Indeed, in *Ulster County*, the instructions referred to the inferred fact as a "presumption," connoting a potentially more mandatory obligation to accept the fact as proven. However, the *Ulster County* court reviewed all of the instructions, including the permissive nature of the specific instruction (i.e., from proof of the basic fact you *may* infer the presumed fact), the instruction that the jury was to consider all of the evidence to determine whether guilt was established beyond a reasonable doubt, the instruction that the jury was the sole arbiter of the weight and credibility of the evidence, and the instruction that the presumption of innocence could only be overcome by proof beyond a reasonable doubt. (*Ulster County Court* v. *Allen, supra,* 442 U.S. at pp. 160-162, fns. 19-22 [60 L.Ed.2d at pp. 794-795].) From the totality of the instructions, the court concluded the jury was clearly instructed that the presumption was permissive only, and that the jury could consider all of the circumstances to determine whether or not to reject the inference. As we discuss below, we likewise believe the instructions in this case as a whole clearly apprised the jury of the permissive nature of the inference.

[6] At most, the deleted language appears to operate in favor of the defendant. Both versions of CALJIC No. 2.15 commence by noting that possession alone is insufficient to permit the inference of guilt. However, the older versions specified that possession could be considered as yet another item of circumstantial evidence, together with other circumstances, to be considered in deciding whether to infer guilty knowledge. The 1984 version omits reference to the use of possession as a fact from which to infer guilty knowledge, even though *McFarland* clearly declared possession is a factor which the jury could consider (in conjunction with other corroborating circumstances) in deciding whether to draw the required inference. Deletion of the specific admonition to consider possession as an additional circumstance from which the inference of guilty knowledge could be drawn appears beneficial, not detrimental, to a defendant caught in possession of stolen goods.

"may") and in fact instructs the jury that it may *not* draw the inference without some corroborative evidence.

The subject instruction is far different from the instruction criticized by *People* v. *Roder, supra,* 33 Cal.3d 491, which Anderson relies upon for the proposition that a jury must be *explicitly* instructed that an inference is permissive only. Unlike the current version of CALJIC No. 2.15, which contains plain permissive language (i.e., "may . . . infer[]"), the *Roder* instruction contained mandatory, directive language. In *Roder,* the jury was instructed that, if it found the foundational facts to be true, the jury ". . . shall presume [guilty knowledge] unless from all the evidence you have reasonable doubt. . . ." (*Id*. at p. 496.) The *Roder* court found the specific and mandatory language of this instruction (especially when viewed in light of the other instructions)[7] created a constitutionally impermissible presumption, rather than a permissive inference of the nature constitutionally approved by the *Ulster County* court. To remedy the constitutional infirmity, the *Roder* court directed the trial court (on remand) to fashion an instruction which informed the jury of the permissive nature of the inference while also making clear that the prosecution retained the burden of proof beyond a reasonable doubt. (*Id*. at p. 507.)

*Roder* does not stand for the proposition that *every* jury instruction in a criminal case which refers to the use of inferences to prove ultimate facts, if unaccompanied by a disclaimer as to its permissive nature, is constitutionally unsound.[8] Instead, *Roder* simply reaffirms a central tenet of due process:

---

[7] In *Roder,* the People argued the instructions, as a whole, still informed the jury that the People retained the burden of proof beyond a reasonable doubt as to the presumed fact. The *Roder* court noted the language relied upon by the People for their "totality of the instructions" argument followed a long discourse by the judge in which the judge specifically explained that the presumption in effect was not a conclusive presumption: "This isn't that kind of presumption. It's what's called a rebuttable presumption, because you have the presumption, presume to know that the property was stolen, but they [defendant] can go forward and raise a reasonable doubt that they actually knew that. So you still do have that question. Basically, it boils down to are you satisfied that they acquired the property or retained the property knowing it was stolen, *or do you have a reasonable doubt.*" *People* v. *Roder, supra,* 33 Cal.3d at p. 504, italics added.) The *Roder* court concluded the highlighted language was insufficient to save the jury instructions from constitutional infirmity, especially since it followed the court's discourse which unconstitutionally placed the burden of raising a reasonable doubt on the defendant.

[8] The court in *Roder* was faced by a unique problem, which further distinguishes the *Roder* holding from the instant case. In *Roder,* the Legislature had enacted a Penal Code section which both shifted the burden of proof to defendant on a key element and established a legislatively prescribed *presumption* of guilty knowledge (see *People* v. *Roder, supra,* 33 Cal.3d at pp. 500-501), precisely the due process violations condemned in *Ulster County.* To save the statute from unconstitutionality, the *Roder* court "interpreted" the statute as prescribing a legislatively sanctioned permissive inference, and instructed the trial court to craft instructions which made the permissive nature of the inference clear. (*Id*. at pp. 505-507.)

Mandatory presumptions which either reduce the People's burden of proof or shift the burden to the defendant to raise a reasonable doubt are constitutionally unsound.

Anderson concedes the criticized instruction does not expressly mandate any presumption. However, Anderson argues a reasonable juror could have interpreted the instruction as requiring the jury to draw the inference. Because a reasonable juror could have so interpreted the instruction, Anderson argues that under *Sandstrom* v. *Montana* (1979) 442 U.S. 510, 514 [61 L.Ed.2d 39, 45, 99 S.Ct. 2450], the instruction is unconstitutional as imposing a presumption. However, in *Sandstrom*, the court confronted an instruction which unequivocally declared the fact was *presumed*. The court's subsequent discussion regarding how a reasonable juror might interpret the instruction focused solely on whether other instructions (i.e., reasonable doubt; people's burden of proof; etc.) cured the infirmity created by the originally defective instruction. (*Id.* at pp. 518-519 [61 L.Ed.2d at pp. 47-48].) Here, however, the instruction is neither explicitly mandatory nor reasonably susceptible to the interpretation urged by Anderson. The language of CALJIC No. 2.15 is permissive, not mandatory. Indeed, rather than instructing the jury it *must* infer intent from the existence of corroborative circumstances, the instruction informed the jury it was prohibited from inferring guilty knowledge unless the jury found corroborative circumstances. We cannot conclude the instruction, on its face, is reasonably susceptible of an interpretation which required the jury to draw the inference once corroborative facts were found.

Moreover, the instructions, as a whole, reinforced the permissive nature of the inference and informed the jury of its responsibility to evaluate the totality of the evidence. The trial court told the jury that (1) it was to decide all questions of fact; (2) circumstantial evidence was evidence from which an inference "*may*" be drawn; (3) an inference is a logical and reasonable deduction from proven facts which may be drawn; (4) when circumstantial evidence is equally susceptible to two reasonable interpretations, the jury must adopt the interpretation pointing toward innocence; and (5) the state had the burden of proof beyond a reasonable doubt. When CALJIC No. 2.15, which on its face is permissive, is viewed in light of the remaining instructions, we cannot conclude a reasonable juror could have understood

that the existence of slight corroborative evidence compelled it to find guilty knowledge.[9]

Accordingly, we conclude the instruction, both on its face and when read in conjunction with the remaining instructions, sufficiently informed the jury of the permissive nature of the inference, and did not impose any constitutionally suspect presumption.

■■■ (2) *The linguistic changes to CALJIC No. 2.15 did not unconstitutionally reduce the People's burden of proving guilt beyond a reasonable doubt.* Anderson also criticizes the linguistic changes adopted in the 1984 version of CALJIC No. 2.15. Anderson contends the changed language, regarding the nature and quality of the necessary corroborative circumstantial evidence, effectively reduces the People's burden of proving guilty knowledge beyond a reasonable doubt. Prior versions of CALJIC No. 2.15 described the necessary corroborative evidence as ". . . other conduct or circumstances tending of themselves to establish guilt." The 1984 version, however, provides: "Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, *and need not in and of itself be sufficient to warrant an inference of guilt.*" (Italics added.)

Anderson concedes the instruction, other than the highlighted portion, is a correct statement of the law, including the statement that the corroborating evidence need only be slight. However, Anderson points out the 1984 version deleted the language that the circumstantial evidence must ". . . tend[ ] of [itself] to establish guilt," and replaced that language with the statement that the corroborative evidence need not, *in and of itself,* be sufficient to warrant a guilty finding. Anderson argues this change unconstitutionally lightens the People's burden of proving guilty knowledge beyond a reasonable doubt, because it allows the jury to infer guilt from circumstances which are otherwise entirely innocent (i.e., circumstances which, in and of themselves, do not warrant an inference of guilt).

■■■ The test of the propriety of the instruction is not the extent to which it departs from the former version, but rather, whether the instruc-

[9]In *Ulster County,* the United States Supreme Court likewise carefully reviewed all of the instructions to determine whether the specifically criticized instruction might have precluded the jury from rejecting the presumption based on their independent evaluation of the evidence. (See *Ulster County Court* v. *Allen, supra,* 442 U.S. at pp. 159-162 [60 L.Ed.2d at pp. 793-795].) The *Ulster County* court, reviewing a set of general instructions markedly similar to the instruction given here (see discussion, *ante,* at fn. 3) concluded the criticized instruction did not unconstitutionally impinge on the jury's responsibility.

tion accurately summarizes governing principles. Since Anderson concedes, as he must, that the instruction (other than the highlighted portion) is correct (see, e.g., *People* v. *McFarland, supra,* 58 Cal.2d 748, 754; *People* v. *Citrino, supra,* 46 Cal.2d 284, at pp. 288-289), the only issue is whether the instruction correctly states that the corroborative evidence is sufficient even though, by itself and standing alone (i.e., in the absence of possession of recently stolen property), it would not warrant an inference of guilt.

We conclude the 1984 version is both an accurate statement of the quality and nature of the necessary corroborative evidence, and indeed, appears to correct a deficiency contained in prior versions of the instruction. The prior versions appeared to require that the circumstantial evidence "tend in itself" to prove guilty knowledge, without regard to the fact that defendant was in possession of recently stolen property. However, by its very nature, circumstantial evidence does not *by itself establish* the fact to be proven, but instead permits the jury to *infer* the disputed fact. If (as Anderson contends) circumstantial evidence were required to be sufficient, standing alone, to prove the disputed fact, there would be no need for the inference which it purports to corroborate (here, the inference of guilty knowledge that the property was stolen).

The 1984 version corrects the inaccuracy of prior versions by declaring that conduct, which by itself would ordinarily not be sufficient to infer the actor knew property was stolen, becomes sufficiently corroborative to allow the inference when the actor is in actual possession of recently stolen property. For example, if the stolen Camcorder had not been in the automobile but had instead been located elsewhere and out of Anderson's possession, the mere fact that Anderson was furtive when awakened at the rest stop, failed to promptly exit the vehicle, and failed to respond to the officers' requests for identification would not "tend of itself to establish" Anderson knew property *located elsewhere* had been stolen. Prior versions of CALJIC No. 2.15, however, seemed to require that corroborative conduct, divorced from the fact of possession, would by itself tend to establish guilty knowledge.

The 1984 version correctly permits the jury to evaluate whether curious (although otherwise apparently innocent) conduct (i.e., conduct not "in and of itself . . . sufficient to warrant an inference" of guilty knowledge), when coupled with the highly incriminating circumstance of possession of recently stolen property, is sufficient to draw the inference of guilty knowledge. Using the previous example, furtive conduct is not "in and of itself

sufficient" to prove guilty knowledge that a Camcorder located elsewhere may be stolen. However, when that same furtive conduct is coupled with possession, the 1984 version of CALJIC No. 2.15 correctly permits the jury to infer guilty knowledge from conduct which (if divorced from possession) might otherwise be insufficient to justify an inference of guilty knowledge.

Thus, strict adherence to the old instruction might lead a jury to think itself precluded from considering conduct which by itself seemed innocent (albeit curious), but when combined with other evidence becomes suggestive of guilty knowledge. The 1984 version corrects this linguistic deficiency, and correctly describes the quality of the corroborative evidence upon which a jury may rely in drawing the necessary inferences. We therefore reject Anderson's suggestion that corroborative circumstantial evidence, as contemplated by CALJIC No. 2.15, must be of a nature which would (in a vacuum) independently establish an inference of guilt. We approve CALJIC No. 2.15 in the form used in this case.

D. *Sufficiency of the Evidence*

In reviewing a conviction on claims of insufficient evidence, the evidence must be viewed in the light most favorable to the prosecution. "After the jury . . . [has] found the defendant guilty, the presumption of innocence is replaced by the presumption in favor of the judgment, and a reversal can be ordered only if, upon no rational hypothesis, is there substantial evidence to support the judgment." (Witkin, Cal. Criminal Procedure (1963) Appeal, § 683, pp. 666-667.) Our review of the totality of the evidence convinces there was a sufficient basis for the jury verdict. It was not disputed that the auto and Camcorder were stolen property, nor could it be disputed that they were in the conscious possession of Anderson. The only issue, then, was whether Anderson knew of the stolen nature of the property. He could hardly have failed to know that Mr. Soo's briefcase was in his car; and although he attempted by his own testimony to exculpate himself, he could give no explanation for that circumstance. When apprehended by the police he was unresponsive and uncooperative. One could surmise that a foreign national (or one who looked like a foreign national) might be hesitant to confront border patrol agents late at night. Anderson, a young blond Caucasian in a new model car, does not fit that category. Anderson acted like a criminal. At trial his explanations were incomplete and questionable. We believe the jury was well warranted in its conclusions.

## IV

### DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Todd, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 10, 1989.