Filed 5/5/16  P. v. Simpson CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WAYNE ROBERT SIMPSON,<br><br>    Defendant and Appellant. | B262752<br><br>(Los Angeles County<br>Super. Ct. No. MA059626) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Lisa M. Chung, Judge.  Affirmed.

Law Offices of David M. Wallin and Andrew J. Tan, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Susan Sullivan Pithey and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Wayne Robert Simpson's grant of probation in the underlying case of committing a lewd act upon a child was revoked by the trial court upon a showing he violated the conditions of probation by receiving stolen goods, namely seven plastic boxes owned by Rite-Aid Corporation. Simpson challenges the judgment on the grounds of insufficiency of the evidence, abuse of discretion, and cruel and unusual punishment. We affirm the judgment.

## FACTS

Simpson pled no contest to committing a lewd act upon a child in violation of Penal Code section 288, subdivision (a)[1]. On May 29, 2014, he was sentenced to eight years in state prison, but execution of the sentence was suspended pursuant to a plea agreement. As a result, he was placed on five years formal probation on the condition he serve 365 days in Los Angeles County Jail. Simpson was released for time served[2] and ordered to report to the probation officer in the Antelope Valley. As further conditions of his probation, Simpson was ordered to "obey all laws and orders of the court" as well as "all rules and regulations of the probation department." He was also subject to various fines and assessments, including $300 to the Department of Justice Sexual Offender Program, a $2,400 restitution fine, and restitution to the victim.

Deputies from the Los Angeles County Sheriff's Department conducted a probation compliance search at Simpson's residence on October 16, 2014. They discovered seven plastic boxes, each marked, "Property of Rite-Aid Corp. Unauthorized possession, use or disposition may be subject to prosecution." On November 21, 2014, an information was filed, which alleged Simpson received stolen property in violation of section 496, subdivision (a), "[o]n or between December 18, 2012 and October 16, 2014[.]"

---

[1] All further section references are to the Penal Code unless otherwise specified.

[2] He was given total custody credit of 365 days, representing 332 days of actual custody and 33 days of good time/work time.

2

A contested probation violation hearing was held on February 13, 2015. David Freeland, Simpson's landlord, testified he transferred the boxes from Simpson's storage unit to his own garage at the time of Simpson's arrest. After he was granted probation, Simpson turned over to Freeland all of his property that he thought might be a violation of his probation, including a pocket knife and a folding utility tool. Freeland placed these items in his safe. Freeland was not concerned the boxes constituted a probation violation because he had worked for "a lot of companies" and in his experience, companies marked their property this way. These markings often remained even after the company had disposed of the property.

Manuel Mendez, an asset protection manager at the Rite-Aid distribution center in Lancaster, testified the boxes were used by Rite-Aid to transport products from its distribution center to its stores. They were valued at approximately $8 to $12 each. It was standard practice for the boxes to be returned to the distribution center for reuse or destruction. According to Mendez, if a box was in the possession of someone who was not associated with Rite-Aid, that likely meant it had been taken without permission. Rite-Aid managers and employees did not have authorization to give away the boxes. Mendez identified the boxes in question through their barcodes. These boxes had been shipped to a store in Lancaster on December 18, 2012. That store subsequently closed. The boxes were taken out of rotation and shipped back to the department handling the usage of the boxes. Mendez could find no further record for these boxes.

The trial court found Simpson to be in violation of probation, reasoning that the markings on the boxes indicated knowledge that the boxes were stolen. Probation was revoked and the eight-year sentence was placed in effect. Simpson timely appealed.

**DISCUSSION**

Simpson challenges his conviction on three grounds: (1) substantial evidence does not support a finding that he knew the boxes were stolen; (2) the trial court abused its discretion when it declined to reinstate probation; and (3) the trial court's imposition of the eight-year sentence constituted cruel and unusual punishment. None of these arguments withstand scrutiny.

3

## I.  Substantial Evidence

Pursuant to section 1203.2, subdivision (a), a court is authorized to revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe . . . that the person has violated any of the conditions of his or her probation . . . ." Facts supporting revocation of probation must be proven by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 440-441.) We review a trial court's decision to revoke probation for abuse of discretion. (*People v. Matranga* (1969) 275 Cal.App.2d 328, 333.)

"Proof of the crime of receiving stolen property requires establishing that the property in question was stolen, that the defendant was in possession of it, and that the defendant knew the property to be stolen." (*People v. Anderson* (1989) 210 Cal.App.3d 414, 420; § 496, subd. (a).) Simpson argues the People did not prove by a preponderance of the evidence that he knew the boxes were stolen. He relies on Freeland's testimony: he helped Simpson purge any prohibited items; he did not believe the boxes to be probation violations; companies marked their property in this manner; and the markings often remained even after the companies disposed of it. Further, the warning merely stated that unauthorized possession *may* be subject to prosecution. Simpson argues it may not reasonably be inferred from this language that the boxes were stolen. Simpson also relies on Mendez's failure to account for the boxes after they were taken out of rotation and returned to the distribution center. Simpson theorizes, "it is possible that the boxes were discarded or given away."

Simpson ignores the remainder of Mendez's testimony, however. Mendez testified the boxes would have been reused until they were destroyed. Mendez did not testify that it was Rite-Aid's policy to discard or give away the boxes once it took them out of rotation. Instead, Rite-Aid's policy was just the opposite. Rite-Aid managers and employees did not have the authority to give away the boxes. Mendez also testified he believed the boxes were stolen if they were in the possession of someone who was not affiliated with Rite-Aid. In any case, the markings on the boxes were clear: "Property of Rite-Aid Corp. Unauthorized possession, use or disposition may be subject to

4

prosecution." The trial court did not act arbitrarily or capriciously in revoking probation on a showing Simpson received stolen property.

## II.    Abuse of Discretion

Simpson next contends the trial court should have reinstated probation because it was a minor, unintended violation and he is capable of rehabilitation. According to Simpson, "absent a showing of a willful violation of probation, it is abuse of discretion for the trial court to revoke probation and impose a prison sentence. (*People v. Galvan* (2007) 155 Cal.App.4th 978, 980; see also [*People v.*] *Zaring* [(1992) 8 Cal.App.4th 362, 379].)"

Simpson relies on the same facts as above to demonstrate there was no willful violation. For the same reasons as stated above, we find the People adequately proved knowledge and intent. The evidence demonstrates Simpson committed a willful violation within five months of his probation. Moreover, there was ample evidence for the trial court to conclude that Simpson was not capable of rehabilitation. Simpson's criminal history is extensive. He was convicted of drug-related charges in 1991, 1994, 1998, 2001, 2007, and 2012. He was also convicted of domestic violence charges in 1996, 2000, and 2011. He had previously been granted probation or parole in two cases, one in 1993 in a narcotics case and one in 2001 in a case involving corporal injury on a spouse or cohabitant. Probation or parole was revoked in both cases for various violations. Further, at the time of his probation revocation hearing in this case, Simpson was on probation for misdemeanor driving under the influence.[3]

In the underlying lewd act upon a child charge, Simpson was presumptively ineligible for probation pursuant to section 1203, subdivisions (e)(4) and (e)(5).[4] Nevertheless, the trial court found that probation would best serve the interests of justice

---

[3]    The trial court terminated that grant of probation.

[4]    Section 1203 provides probation shall not be granted to any person who has been previously convicted of a violation of section 288 for lewd acts involving children or any person who has been previously convicted twice of a felony "[e]xcept in unusual cases where the interests of justice would best be served if the person is granted probation[.]" (§ 1203, subd. (e).)

5

because it would provide Simpson the opportunity to address his drug and alcohol abuse. At the time of his sentencing, the trial court warned Simpson of the "big axe hanging over [his] head with that eight years that will come crashing down" if he committed any probation violations. Given these circumstances, it was not an abuse of discretion for the trial court to refuse to reinstate probation.

## III. Cruel and Unusual Punishment

Lastly, Simpson challenges the trial court's revocation of probation on constitutional grounds, arguing the imposition of an eight-year term for receiving stolen property constitutes cruel and unusual punishment. Simpson misapprehends the crime for which he is punished. The eight-year sentence was imposed for the crime of committing a lewd act involving a minor under section 288 and not for the crime of receiving stolen property. In any case, Simpson has forfeited the issue. (*People v. Hawkins* (1975) 44 Cal.App.3d 958, 968 (*Hawkins*).) *Hawkins* is instructive. Under strikingly similar circumstances, the court in that case explained: "The defendant's assertion that he was subjected to 'cruel and unusual punishment,' unsupported by authority, has not been timely raised on appeal. The revocation of probation is not 'punishment.' The 'punishment' of a state prison sentence was imposed at the original sentencing. On November 3, 1971, the state prison sentence was suspended when the defendant was placed on probation. This assignment of error should have been raised at that time. It is not timely raised following a revocation of probation." (*Ibid.*) We reach the same conclusion here.

### DISPOSITION

The judgment is affirmed.


BIGELOW, P.J.

We concur:



RUBIN, J.                  GRIMES, J.

6