Filed 1/16/26  P. v. Clayton CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>   v.<br><br>JUSTIN ALLEN CLAYTON,<br><br>       Defendant and Appellant. | C101806<br><br>(Super. Ct. No. CRF230076401) |

A jury found defendant Justin Allen Clayton guilty of grand theft and possession of an injection device.  The trial court sentenced him to three years in jail for the grand theft and a concurrent six months for possession of the injection device.

On appeal, defendant contends:  (1) insufficient evidence supports his grand theft conviction; (2) the prosecutor committed misconduct by misstating the law on grand theft in closing; and (3) the sentencing minute order must be amended because the aggregate term of incarceration (three years) is incorrectly reflected as three years and six months.

We disagree with defendant's first two contentions but agree with the third.  We direct the trial court to amend the sentencing minute order and forward a certified copy to the county sheriff.  The judgment is affirmed.

1

Undesignated statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL BACKGROUND

On March 23, 2023, the manager of a storage facility saw four people "stripping wire for copper" on a surveillance camera and called the sheriff's department.

When the deputy sheriffs arrived at the storage facility, they saw defendant and two others "doing something" around a white car and a black car and found partially stripped copper telephone wires on the ground near the cars. The deputy sheriffs found more telephone wires in the black car and bolt cutters and wire cutters in the white car. One of the deputy sheriffs found defendant hiding in a storage unit.

The deputy sheriffs interviewed defendant. Defendant admitted the white car was his. He also said he went inside the storage unit to hide from law enforcement because "the wire situation" "didn't look like it was too good." But he insisted he did not know where the wires came from and merely helped cut them because one of his cohorts was getting tired. A deputy sheriff suggested defendant's cohort "probably stole" the wires, and defendant responded: "I guess. I mean – I don't know. Probably." Defendant also admitted to "[b]ad judgment" and that he "should have told [his cohorts] to kick rocks."

An AT&T area manager identified the telephone wires found at the storage facility as belonging to AT&T because they were part of a unique telephone cable that only AT&T uses. And in Yuba City and Marysville, AT&T uses this type of cable at only two locations. But the AT&T area manager had not received any outage notice. He estimated it would cost AT&T between $1,200 and $1,300 to replace the telephone wires found at the storage facility.

The AT&T area manager later found telephone poles with missing cables in Marysville and contacted the sheriff's office. A deputy sheriff testified that he interviewed a resident who lived near the affected telephone poles. According to the deputy sheriff, the resident said she saw a black car and a white car park near the telephone poles around 4:00 a.m. about a week before the storage facility incident. But

2

the resident testified that she saw a white car and could not tell the model of the other vehicle. She also testified that she saw the vehicles on two different days.

Based on the deputy sheriff's experience, to access copper wires inside telephone cables, one must use tools such as bolt cutters or wire cutters to cut through the plastic sheath. Once the copper wires are removed from the plastic sheath, they may be sold to scrap yards for cash.

The People charged defendant with grand theft on or about March 23, 2023 (§ 487, subd. (a)), receiving stolen property exceeding $950 in value (§ 496, subd. (a)), possession of an injection device (Health & Saf. Code, § 11364, subd. (a)), and possession of burglar's tools (§ 466). The People further alleged five aggravating circumstances. (Cal. Rules of Court, rules 4.421(a)(8), (b)(2)-(5)).

The jury watched the surveillance video from the storage facility. In the video, defendant used tools from his car to strip the telephone wires that his cohorts brought in their car. He walked away when the deputy sheriffs arrived.

The jury found defendant guilty of grand theft as charged and possession of an injection device but acquitted him of possession of burglar's tools. Because the jury found defendant guilty of grand theft, it did not reach a verdict on receiving stolen property. The jury also found true all aggravating circumstances.

The trial court sentenced defendant to the upper term of three years on the grand theft count and a concurrent term of six months on the possession of the injection device count, all to be served at the county jail. It also ordered defendant to pay victim restitution to AT&T.

Defendant timely appeals.

3

DISCUSSION

I

*Sufficiency of the Evidence*

Defendant contends insufficient evidence supports his grand theft conviction because no substantial evidence shows he stole the telephone cables. We disagree and find substantial evidence on a direct perpetrator theory. The jury received instruction on grand theft as a direct perpetrator and the prosecutor did not foreclose guilt on that theory.

A.     *Additional Background*

The trial court instructed the jury on possession of recently stolen property as evidence of a crime: "If you conclude that the defendant knew he possessed property and you conclude that the property had in fact been recently stolen, you may not convict the defendant of grand theft or receiving stolen property based on those facts alone. However, if you also find that supporting evidence tends to prove his guilt, then you may conclude that the evidence is sufficient to prove he committed grand theft or receiving stolen property. [¶] The supporting evidence need only be slight and need not be enough by itself to prove guilt. You may consider how, where, and when the defendant possessed the property, along with any other relevant circumstances tending to prove his guilt of grand theft or receiving stolen property. [¶] Remember that you may not convict the defendant of any crime unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt."

During closing, the prosecutor told the jury, "if you decide these other two men that came driving in with the wire were the ones that physically stole the wire … and you also find that [defendant] didn't physically steal it, you can still find he aided and abetted the grand theft." She conceded "[w]e don't know exactly when that wire was stolen" but

4

argued the jury might be able to infer it was recent from the fact that AT&T had not yet received an outage notice.

B.      *Analysis*

"To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.) "We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) "The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence," and "[a]n appellate court must accept logical inferences that the jury might have drawn from the circumstantial evidence." (*Id.* at p. 396.)

In theft offenses, "[p]ossession of recently stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt." (*People v. McFarland* (1962) 58 Cal.2d 748, 754.) "Possession of the stolen property may be actual or constructive and need not be exclusive." (*People v. Land* (1994) 30 Cal.App.4th 220, 223.) "[I]t is for the jury to conclude what time period qualifies as 'recent.' " (*People v. Anderson* (1989) 210 Cal.App.3d 414, 422.) "[T]the corroborating evidence need not be sufficient to prove guilt by itself." (*People v. Moore* (2011) 51 Cal.4th 1104, 1131.) But "mere possession of stolen property is not sufficient in and of itself to sustain a conviction for grand theft." (*Williams v. Superior Court of Los Angeles County* (1969) 71 Cal.2d 1144, 1149, emphasis omitted.)

Here, defendant concedes the evidence shows he "had possession of the wire" that belonged to AT&T. The jury reasonably could have found the copper telephone wires in defendant's possession were recently stolen from AT&T's telephone poles in Marysville.

These copper telephone wires were part of a unique telephone cable that only AT&T uses at two locations in Marysville and Yuba City. AT&T discovered its telephone poles in Marysville had missing cables but had not received any outage report, suggesting no one had noticed the service interruption yet. A Marysville resident saw two cars similar to defendant's and his cohorts' cars parked near the affected telephone poles about a week prior. Although there were some inconsistencies between the resident's and the deputy sheriff's trial testimony, we do not resolve this conflict. (*People v. Maury, supra*, 30 Cal.4th at p. 403.) The deputy sheriff's testimony of the resident's statement, the uniqueness of the copper telephone wires, and the lack of an outage report, is sufficient to support the jury's conclusion that the theft was recent. (See *People v. Anderson, supra*, 210 Cal.App.3d at p. 422 [the jury reasonably determined that property stolen four and a half months ago was "recently stolen"].) We next consider corroborating evidence.

When the deputy sheriffs arrived, defendant fled and hid in a storage unit. He later admitted he was hiding from law enforcement because "the wire situation" "didn't look like it was too good." "Flight, like possession of stolen property, is not enough, standing alone, to sustain a conviction . . . but they are strong enough to support each other, to supply that slight corroboration which each needs." (*People v. Wells* (1960) 187 Cal.App.2d 324, 329, citing § 1127c.)

Defendant also admitted to a deputy sheriff the copper wires were "[p]robably" stolen, his "judgment" was "[b]ad" in helping his cohorts, and he "should have told [his cohorts] to kick rocks." Defendant also carried bolt cutters and wire cutters in his car, both of which could be used to strip copper wires from telephone cables.

All this corroborating evidence, along with defendant's possession of the recently stolen copper telephone wires, is sufficient to support defendant's grand theft conviction.

Defendant's reliance on *Mikes v. Borg* (9th Cir. 1991) 947 F.2d 353 and *People v. Morris* (1988) 46 Cal.3d 1 is misplaced. The defendant in *Mikes* did not possess recently stolen property, and the prosecution's case "rested exclusively upon the fact that [the

6

defendant's] fingerprints were among those found" near the victim's body. (*Mikes*, at p. 355.) And in *Morris*, the defendant's possession of a recently stolen credit card was not corroborated by his statements or conduct. (*Morris*, at pp. 20-21, overruled on another ground in *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5, 544, fn. 6.)

Having reached our conclusion of sufficient evidence on a direct perpetrator theory, we need not decide whether sufficient evidence supports defendant's grand theft conviction on an aider and abettor theory, or whether the prosecutor prejudicially misstated the law on aiding and abetting grand theft.[1]

## II

### *Prosecutorial Misconduct*

Defendant contends the prosecutor committed misconduct by misstating the elements of grand theft on a direct perpetrator theory at closing. Acknowledging defense counsel made no objection to the prosecutor's challenged statements, defendant alternatively contends he received ineffective assistance of counsel. We exercise our discretion to reach the merits of defendant's prosecutorial misconduct claim and find no misconduct.

A.     *Additional Background*

At the beginning of her closing argument, the prosecutor stated: "As the judge has said repeatedly, the CALCRIMs you're going to get are the law. I'm trying to be as faithful to them as I can. But if someone thinks I said something different from the CALCRIMs, the CALCRIMs control. Please use those."

---

[1] The People contend the prosecutor did not pursue grand theft under a direct perpetrator theory and instead relied on the aiding and abetting theory to prove defendant's guilt. But the court instructed on direct perpetrator liability and the prosecutor left the door open to both theories, as she told the jury in closing, "if you decide these other two men that came driving in with the wire were the ones that physically stole the wire . . . and you also find that [defendant] didn't physically steal it, you can still find he aided and abetted the grand theft."

She told the jury the elements of grand theft: "[T]he elements we have to prove are as follows: The defendant took possession of property owned by someone else. That's why we brought in the AT&T people, to show it was AT&T wire. Deputy [] talked to him more about that to show he should know this is communication wire. This isn't something people roam around with in the back of their cars. [¶] Second element, the defendant took property without the owner's or owner's agent's consent. It's theft, right? They didn't go to AT&T and ask for permission. . . . It was cut down, no one notified them, and no one bought it from them. [¶] Three, when the defendant took the property, he intended to deprive the owner of it permanently or to remove it from the owner's or owner's agent's possession for so an extended period of time that the owner would be deprived of a major portion of the value or enjoyment of the property. That's a mouthful. [¶] But it means to take it away from the owner or take away the value. Well, copper wire cables that are used for communication and you cut them out of the wire, you aren't going to be able to use those, and they've just lost their value. So that element is met. [¶] And four, the defendant moved the property, even a small distance, and kept it for any period of time, however brief. [¶] That phone wire was moved from the … theft site to the storage facility. It doesn't have to be a great distance. They don't have to move it across the state. That element is met."

*B.      Analysis*

Theft by larceny is "committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away. [Citations.] The act of taking personal property from the possession of another is always a trespass unless the owner consents to the taking freely and unconditionally or the taker has a legal right to take the property. [Citation.] The intent to steal … is the intent, without a good faith claim of right, to permanently deprive the owner of possession. [Citation.] And if the taking has begun, the slightest movement of the property constitutes a carrying away or

8

asportation." (*People v. Davis* (1998) 19 Cal.4th 301, 305, footnotes omitted.) Grand theft is theft where the property taken is of a value exceeding $950. (§ 487, subd. (a).)

"A prosecutor is given wide latitude to vigorously argue his or her case and to make fair comment upon the evidence, including reasonable inferences or deductions that may be drawn from the evidence." (*People v. Ledesma* (2006) 39 Cal.4th 641, 726.) "We review claims of prosecutorial misconduct under an abuse of discretion standard [citation], asking whether there is a reasonable likelihood the jury construed the remarks in an objectionable fashion." (*People v. Dworak* (2021) 11 Cal.5th 881, 910.) "A prosecutor's conduct violates the federal Constitution only when it is ' " 'so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process.' " ' " (*Ledesma*, at p. 726.)

Here, the prosecutor correctly stated each element of grand theft by larceny and related the facts she believed satisfied the elements. Contrary to defendant's contention, she made no argument that any single fact or sets of facts alone proved defendant stole the telephone cables. She also reminded the jury that if it believed that her statement of law differed from the CALCRIMs, the CALCRIMs control. There was no prosecutorial misconduct.

### III

### *The Sentencing Minute Order Must Be Amended*

We received an augmented clerk's transcript containing a corrected minute order from the August 12, 2024 sentencing hearing and an amended abstract of judgment. We agree with the parties that the corrected minute order erroneously states defendant's aggregate term of incarceration as three years and six months, conflicting with the three years the trial court orally pronounced. We direct the trial court to correct this clerical error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185, 188.)

9

## DISPOSITION

The judgment is affirmed.  The trial court is directed to prepare an amended minute order from the August 12, 2024 sentencing hearing reflecting defendant's three-year total term of incarceration.  The trial court shall then forward a certified copy of the amended August 12, 2024 minute order to the Yuba County Sheriff's Department.

         /s/ 
         MESIWALA, J.

We concur:

   /s/ 
HULL, Acting P. J.

   /s/ 
MAURO, J.

10