[No. B057019. Second Dist., Div. Three. Jan. 14, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL GOMEZ, Defendant and Appellant.

**COUNSEL**

Marcia C. Levine, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald S. Matthias and Jeff Rubin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

DANIELSON, J.—Daniel Gomez (defendant) appeals from the judgment entered following his conviction by jury of criminal offenses.

We reverse the judgment with regard to his convictions of false imprisonment for purposes of protection from arrest (Pen. Code, § 210.5)[1] and grand theft vehicle (§ 487h, subd. (a)). We remand the matter with directions to dismiss those charges, to stay imposition of sentence as to the conviction of robbery (§ 211) and to credit defendant with one additional day of custody. The judgment of conviction of kidnapping for robbery (§ 209, subd. (b)) is affirmed.

The principal significance of this decision is its definition of the parameters of section 210.5, which was enacted in 1987, effective January 1, 1988.

FACTUAL STATEMENT

At about 2:45 a.m., on April 7, 1990, Jeanine Anderson (Anderson), a cocktail waitress at a night club in Torrance, driving home from work, pulled into a 7-Eleven store. As she got out of her car, defendant and a Mexican woman approached and asked for a ride. Anderson, who had never seen defendant before, said "no" and tried to lock the car. Defendant put his hands over her mouth and shoved her back into the car. He threatened to "stick" her if she did not shut up. The woman covered Anderson's mouth and kept her in the back seat while defendant drove around for about 10 to 15 minutes.

After driving to an alley, the two pulled Anderson out of the car. While the woman held Anderson, defendant removed two rings and a gold necklace from her person. He also ripped off her gold earrings. During that time Anderson was screaming and trying to get away. Defendant made various threats to stab Anderson if she did not shut up. They then proceeded to tie Anderson to a fence with a rope.

When they were tying Anderson to the fence, the woman noticed Anderson's diamond watch. Although the woman said: "Daniel, get that watch,"

---

[1]All further section references are to the Penal Code unless otherwise indicated.

she took the watch off Anderson's wrist herself. Defendant then placed Anderson's hands over her head and tied her wrists together with rope, which was tight and hurt. He tied the rope to the fence which prevented Anderson from escaping. It was not until several hours later, about 11 a.m. or noon, that a passing motorist found and untied Anderson and left saying she didn't want to get involved.

In the meantime, defendant had driven away with the woman in Anderson's car, a gold-colored Thunderbird, which belonged to Anderson's boyfriend. Prior to driving off, they removed the contents of Anderson's purse, which contained $180, and threw the purse into the alley. A pair of expensive sunglasses in the car was also later found to be missing.

At the Wilmington Jewelry and Loan pawnshop defendant pawned Anderson's necklace at 9:48 a.m. and later that day, at 11:04 a.m., he also pawned the two rings.

On the same day, April 7, 1990, at about 5:30 p.m., Officer Perez stopped defendant, who was driving the Thunderbird, because he appeared to be too young to drive.[2] Defendant, who did not have a driver's license, told the officer the car belonged to Lena, his friend, but he denied knowing Lena's last name or her address.

At the police station defendant orally stated to Detective Tanner: A White lady in a brown car drove up to his apartment building at about midnight and asked him if he would like to get high with her. They drove to the Comet Motel and smoked dope and watched television. They then drove to the Wilmington Jewelry and Loan pawnshop where he pawned a necklace and rings she had given him so they could buy more cocaine. Next, they picked up a Mexican girl who sat in the front with the White girl. From the back seat he saw the Mexican girl grab for the ignition. Although the White girl fought her off, the Mexican girl took a watch from the White girl, who got out of the car and ran away. He then dropped off the Mexican girl a block away from where he lived and drove himself home.

In his written statement defendant changed the time when they picked up the Mexican girl, from before the jewelry was pawned to after the jewelry was pawned.

The motel registration card dated April 7, 1990, at 4:11 a.m. revealed a license plate number similar to that of the stolen Thunderbird and the name Daniel Gomez. However, Cheng Min Liou (Liou), a Comet Motel employee,

---

[2]Defendant was 18 years old at the time.

could not identify defendant as the registrant. Liou, however, saw the man with a Mexican girl.

On June 14, 1990, Anderson received a collect call from someone who asked for "Jeanine" and stated: "It was me." When she asked who me is, the caller replied: "Me, Daniel." In response to her question, the caller stated he had obtained Anderson's number from the public defender and stated that he was sorry for what he had done and that he was going to do his time, which he thought would be 17 or 18 months, and get out. When the caller asked: "Did they catch the bitch yet?" Anderson asked for her name, which he refused to disclose. She received three more telephone calls in which the caller stated: "It's me." Anderson hung up each time. The caller spoke in a Spanish accent and in a voice similar to defendant's.

In his defense defendant testified: Anderson pulled up to the front of his residence out of nowhere and asked him if he wanted to get loaded at a motel. She drove to the Comet Motel and both went to the registration window.

Defendant further testified that he and Anderson then consumed drugs and watched television in a motel room. Anderson later told defendant to pawn her jewelry, because she had no more money.

After he pawned her jewelry on two separate occasions, they obtained more "dope." They then cruised around and picked up a Mexican girl at Anderson's urging. Defendant stated they appeared to be old friends. When the Mexican girl snatched Anderson's watch and the keys, Anderson exited the car and ran down an alley. The Mexican girl gave no reply when defendant asked why she took the watch. Defendant drove around with the Mexican girl for about seven hours but never learned her name. After she left, he drove around until he was arrested.

Defendant admitted lying to the police about the car's owner. He also stated he knew he had done something wrong but he denied tying Anderson to the fence.

In rebuttal Detective Tanner testified Liou told him he had never seen Anderson before the preliminary hearing.

PROCEDURAL STATEMENT

In a four-count information defendant was charged with kidnapping for purposes of robbery (§ 209, subd. (b)), robbery in the second degree

(§ 211), "false imprisonment of a hostage" (§ 210.5), and grand theft vehicle (§ 487h, subd. (a)). The robbery and kidnapping charges were alleged to be serious felonies within the meaning of section 1192.7, subdivision (c)(19) and (20).

Defendant pleaded not guilty.

At the close of the prosecution's case, the court denied a defense motion to dismiss (§ 1118.1) the charges of kidnapping for purposes of robbery and false imprisonment for purposes of protection from arrest.

The jury returned a guilty verdict on all counts but made no findings as to whether the serious felony allegations were true.

On the kidnapping for robbery conviction (§ 209, subd. (b)) the court sentenced defendant to life with the possibility of parole. For his conviction of false imprisonment for purposes of protection from arrest, he was sentenced to eight years in state prison, the high term, which was to be served consecutive to the life term. He was then sentenced to three years (midterm) in state prison for the robbery conviction and three years for the grand theft vehicle conviction, both of which were to run concurrent with each other and the sentence on the false imprisonment conviction. Defendant was ordered to pay $5,000 as restitution. He received a total of 366 days in conduct and custody credits.

## ISSUES PRESENTED

Defendant makes five basic assignments of error: (1) There was insufficient evidence to support his conviction of false imprisonment for purposes of protection from arrest under section 210.5; (2) section 654 bars defendant's conviction of grand theft; (3) section 654 mandates the sentences on all counts except kidnapping be stayed; (4) failure to instruct with CALJIC No. 2.71 was prejudicial error; and (5) defendant is entitled to an additional day of custody credit.

## DISCUSSION

### I. *Section 210.5 Factually Inapposite*

Defendant's attack on his conviction of false imprisonment for purposes of protection from arrest or use as a shield (§ 210.5) is based on his contention that Anderson was not a person included within the protections of that section. He contends that the legislative intent reflects that section 210.5 applies only to hostage situations.

We reverse defendant's conviction of that charge on the ground that it is factually inapposite. Section 210.5 provides:

"Every person who commits the offense of false imprisonment, as defined in Section 236, against a person for purposes of protection from arrest, which substantially increases the risk of harm to the victim, or for purposes of using the person as a shield is punishable by imprisonment in the state prison for three, five, or eight years."

We hold the language "false imprisonment . . . [of] a person for purposes of protection from arrest, which substantially increases the risk of harm to the victim" is unambiguous and plainly means there must be a threat or risk of imminent arrest. This clear meaning is reflected in the alternative: "or for purposes of using the person as a shield." In both situations the victim is being held hostage by the perpetrator in order to prevent his imminent arrest by law enforcement officers.[3]

Although the Attorney General acknowledges the language is unambiguous, he invites this court to adopt a broader definition of the term "for purposes of protection from arrest." He essentially argues section 210.5 applies whenever the victim is falsely imprisoned by the perpetrator so long as such imprisonment "substantially increases the risk of harm to the victim." He urges that the charge and conviction under section 210.5 in this case were proper since defendant "substantially increase[d] the risk of harm to the victim" when he tied her to the fence so she could not get away and was exposed to the weather for a length of time.

We reject the Attorney General's position as based on a construction of section 210.5 which is not warranted by its unequivocal language. ■ "It is a cardinal rule that statutes should be given a reasonable interpretation and in accordance with the apparent purpose and intention of the law makers. Such intention controls if it can be reasonably ascertained from the language used. [Citation.]" (*People* v. *Ashley* (1971) 17 Cal.App.3d 1122, 1127 [95 Cal.Rptr. 509]; see also, *People* v. *Cole* (1982) 31 Cal.3d 568, 572 [183 Cal.Rptr. 350, 645 P.2d 1182].)

---

[3] A "hostage" is defined as "[a] person held as a pledge that certain terms will be fulfilled." (The American Heritage Dict. (2d college ed. 1982) p. 624.) We note that the heading of the chapter in which section 210.5 appears is entitled "HOSTAGES." We further note defendant here was specifically charged with the offense of "FALSE IMPRISONMENT OF A HOSTAGE" under section 210.5.

■ Our holding is also buttressed by the legislative history of section 210.5, which was enacted in 1987.[4] Prior to the enactment of that section the Penal Code did not provide punishment tailored to fit the situation where the perpetrator holds the victim hostage to prevent arrest or for use as a shield. The purpose of Senate Bill No. 713, the source of section 210.5, was to make the offense of false imprisonment of a hostage under certain circumstances punishable as a felony. The Los Angeles District Attorney's office, the source of the bill, urged that there be harsher punishment for false imprisonment of a hostage, which would be in line with the offense of kidnapping, a felony, to which this offense was analogous, instead of the lesser punishment applicable to false imprisonment, known as a "wobbler," which can be either a misdemeanor or a felony.

Based on the foregoing we conclude that defendant's conviction under section 210.5 must be reversed and we direct the trial court to dismiss that charge upon filing of the remittitur herein. The facts of this case do not support a reasonable inference that defendant falsely imprisoned Anderson "for purposes of protection from arrest" within the meaning of section 210.5.

## II. Grand Theft Conviction Barred

■ Defendant next contends that his conviction for grand theft vehicle must be reversed on the ground that the charge of grand theft vehicle merges with his robbery charge and cannot be separately punished, as prohibited by section 654.

We agree. We reverse the judgment of conviction of defendant for grand theft vehicle and direct the trial court to dismiss that charge upon filing of the remittitur herein. Although defendant exited the vehicle for the purpose of tying up Anderson before driving the vehicle away, we conclude that the totality of the circumstances show that he had but one intent when he kidnapped Anderson, i.e., to rob her of all her valuables, including her car, and that there was but a single continuous course of conduct. (See, e.g., *People* v. *Irvin* (1991) 230 Cal.App.3d 180, 184-186 [281 Cal.Rptr. 195; see also, *People* v. *Cole, supra,* 31 Cal.3d 568, 582; *People* v. *Miller* (1974) 43 Cal.App.3d 77, 81 [117 Cal.Rptr. 491].)

## III. Robbery Conviction Sentence Must Be Stayed

■ Defendant argues that his sentence on the robbery conviction must be stayed pursuant to section 654 since the offense of robbery was necessarily included in the offense of kidnapping for the purpose of robbery.

---

[4]On September 24, 1991, this court granted the People's request for judicial notice of 13 documents, which reflect the legislative history of section 210.5.

The People concede this point. We find the concession to be well founded and direct the trial court to stay the sentence on defendant's robbery conviction. Although defendant tied up Anderson before making off with her car, the kidnapping for robbery was not completed until he drove off with her car. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639-640 [105 Cal.Rptr. 681, 504 P.2d 905]; cf. *People* v. *Williams* (1966) 244 Cal.App.2d 658, 661-662 [53 Cal.Rptr. 392]; *People* v. *Foster* (1988) 201 Cal.App.3d 20, 27-28 [246 Cal.Rptr. 855].)

IV.  *Failure to Give CALJIC No. 2.71 Harmless Error*

Defendant argues that failure to instruct the jury sua sponte with CALJIC No. 2.71 (oral admissions or statements to be viewed with caution)[5] was prejudicial error. He contends that the instruction was mandated based on Anderson's testimony about the June 14, 1990, telephone conversation.

We find the omission to be error; however, based on our review of the entire record, we conclude that reversal is not required since it is not reasonably probable that a result more favorable to defendant would have been reached in the absence of such error. (See, e.g., *People* v. *Stankewitz* (1990) 51 Cal.3d 72, 94 [270 Cal.Rptr. 817, 793 P.2d 23].)

V.  *Defendant is Entitled to One-day Credit*

Defendant urges and the People concede that defendant is entitled to an additional day of custody credit. We find this concession also to be well founded and direct the trial court to add an additional day of custody credit. Defendant was arrested on April 7, 1990, and sentenced on December 7, 1990. The court erred in calculating the in-custody time to be 244 days instead of 245 days.

## DECISION

The judgment is reversed with regard to defendant's convictions under sections 210.5 (false imprisonment for purposes of protection from arrest)

---

[5]CALJIC No. 2.71 provides:

"An admission is a statement made by [a] [the] defendant other than at [his] [her] trial which does not by itself acknowledge [his] [her] guilt of the crime(s) for which such defendant is on trial, but which statement tends to prove [his] [her] guilt when considered with the rest of the evidence.

"You are the exclusive judges as to whether the defendant made an admission, and if so, whether such statement is true in whole or in part. If you should find that the defendant did not make the statement, you must reject it. If you find that it is true in whole or in part, you may consider that part which you find to be true.

"[Evidence of an oral admission of [a] [the] defendant should be viewed with caution.]"

and section 487h, subdivision (a) (grand theft vehicle). The matter is remanded with directions for the trial court to dismiss the above two charges upon filing of the remittitur herein, to stay imposition of sentence as to the robbery conviction (§ 211) and to credit defendant with one additional day of custody. The judgment of conviction of kidnapping for robbery is affirmed.

Klein, P. J., and Hinz, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 26, 1992.