[No. B068040. Second Dist., Div. Seven. Feb. 10, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
SHAWN GAMBLE, Defendant and Appellant.

**COUNSEL**

Marleigh A. Kopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Peggy S. Ruffra, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, P. J.**—A jury found defendant guilty of second degree robbery (count 1) and grand theft auto (count 2), and as to each count, the personal firearm-use allegation to be true. He appeals from the judgment.

FACTS

On October 19, 1991, about 3:30 p.m., Robert Stieglitz, a private jewelry dealer, drove his white 1990 Acura Legend to a preschool where he was to put on a jewelry show; he carried with him in the trunk of the Acura, 3,000 pieces of jewelry worth a wholesale value of $200,000 which had been advanced to him on consignment from manufacturers. When he got out of the Acura in the driveway of the preschool, defendant approached him, put a gun in his side and demanded, "Give me your keys"; taken by surprise, Stieglitz did not respond and, after repeating the demand and Stieglitz did not move, defendant reached into his pocket and took his keys, wallet, and a diamond tennis bracelet; defendant warned, "Don't do anything or I'll smoke you," and jumped into the Acura whereupon, another man ran out of the

shadow of the building and got into the passenger side, and defendant drove away; the Acura contained a cellular phone.

Stieglitz immediately notified police who responded within ten minutes; he described the two robbers as male Blacks about five feet, eight inches tall with short hair; at the preliminary hearing he testified the man with the gun did not appear to be taller than he—five feet, ten inches tall; he was upset when he talked to police because he had just lost his livelihood.

Four days after the robbery, October 23, about 9:30 p.m., Officer Daniels observed a blue Cadillac fail to stop at a stop sign; he made a traffic stop and found defendant driving the car; in the front passenger seat was defendant's younger brother, Tyrone Gamble, a juvenile, and in the back, another juvenile, Gregory James; defendant told him he had just purchased the Cadillac, the registration was in the glove compartment and he could check on it; he went into the car and found the bill of sale (from a used car dealer on October 21, two days after the robbery; defendant paid the $2,550 purchase price in cash); in plain view on the floor of the passenger side, was a wallet which contained Richard Stieglitz's driver's license and credit cards. No one in the car knew to whom the wallet belonged. Officer Daniels then determined that four days earlier, Stieglitz had been the victim of a robbery involving $250,000 worth of jewelry, and he noticed defendant was wearing two gold necklaces, three gold rings, a bracelet, a gold watch and an earring; his brother, Tyrone, was also wearing jewelry and had Stieglitz's Shell credit card in his possession which, he said, he had gotten from the wallet; in the glove compartment of the Cadillac the officer found two more rings.

The day after the robbery, on October 20, police recovered Stieglitz's white Acura, which had been abandoned, on Reeve Street in Compton; defendant's brother, Tyrone, and Gregory James lived on Reeve Street about 10 houses from the location of the Acura. Gregory James told police he was not involved in the crime, but that defendant had said he had "done a jack [street robbery] and gotten a lot of jewelry" and had dumped the car down the street from his residence; while in the patrol car he showed them where defendant stayed, which was about 4 blocks away from where the Acura had been abandoned, and when he pointed out defendant's residence, he was "extremely nervous" and slouched down in the backseat so he would not be seen because he feared retaliation. At trial, Gregory James denied telling police about defendant. It was established by one witness defendant had a gang affiliation.

On October 24, five days after the robbery, Stieglitz identified defendant as the robber from a six-photo lineup; at the preliminary hearing he testified

there was "absolutely no doubt" about his identification of defendant as the robber; at trial he was not sure if the robber was in court; defendant looked different with his longer hair.

Stieglitz identified the wallet found in defendant's Cadillac and the jewelry defendant, his brother and the juvenile were wearing, as belonging to him; he identified the bracelet Tyrone wore as one he had obtained from one of his clients. When Stieglitz received his cellular phone bill for the month of October, it included a call made an hour after the robbery, at 4:30 p.m., to Carola Giles, an old friend of defendant and with whom he had stayed when 17 years old, and with whom Tyrone was staying, another call to Giles, as well as a call to defendant's girlfriend Shaneka King.

In defense, the mother of Tyrone and defendant testified the wallet "looked like" Tyrone's wallet; defendant is over six feet and Tyrone, a little over five feet, six and one-half inches.

I

## Convictions for Robbery and Grand Theft Auto

In charging defendant in count 1 with second degree robbery (Pen. Code, § 211) and alleging that on October 19, 1991, he robbed Stieglitz of personal property and used a firearm, charging him in count 2 with grand theft vehicle (Pen. Code, § 487h, subd. (a)) and alleging that on October 19, 1991, he stole from Stieglitz a 1990 Acura Legend and used a firearm, and in proving the same, the prosecution fragmented defendant's conduct of approaching Stieglitz, holding a gun to his left side, reaching into his pocket and taking his car keys, wallet, and a diamond bracelet, threatening to shoot him if he did anything, and driving away in the Acura, into two separate offenses. Defendant was convicted of those two offenses—robbery and grand theft auto—arising out of the same incident. ■ Thus, appellant argues that he may not be convicted of both robbery and grand theft of the automobile stolen during the robbery—the Acura was but one of the items taken; and, as the theft of the Acura is an offense included within robbery, he could not be convicted of a separate theft for its taking. We agree on the authority of *People* v. *Rush* (1993) 16 Cal.App.4th 20 [20 Cal.Rptr.2d 15]; *People* v. *Gomez* (1992) 2 Cal.App.4th 819 [3 Cal.Rptr.2d 418]; and *People* v. *Irvin* (1991) 230 Cal.App.3d 180 [281 Cal.Rptr. 195].

*People* v. *Rush, supra*, 16 Cal.App.4th 20, a case with almost identical facts, was recently decided by a majority of this court. Rush took from the victim at gunpoint his wallet, keys, and automobile. As in the case now

before us, Rush was charged with and convicted of robbery and grand theft auto, both violations of the Penal Code. We held that the grand theft of the automobile was a lesser included offense of the robbery; thus it was error to convict defendant of both offenses since robbery is a form of theft, and the taking of multiple items, including the car, in a continuous theft transaction constitutes only one offense. (*Id.* at p. 23.)

In *Rush* we relied on *People* v. *Irvin, supra,* 230 Cal.App.3d 180, which also spawned a dissent opinion. Irvin robbed the victim of her purse and money in her car in a parking lot, then forcibly stole her car when it had been driven half way across the lot. Said the *Irvin* court, "Although the defendant took more than one item of personal property . . . the few seconds which elapsed between each taking coupled with the circumstance that her car traveled some small distance across the parking lot are wholly insufficient facts to sustain a finding that defendant can be convicted of both robbery and grand theft in this case. The robbery here was a continuous transaction, and the theft of the automobile was necessarily included within that robbery." (*People* v. *Irvin, supra,* 230 Cal.App.3d at p. 186; see also *People* v. *Gomez, supra,* 2 Cal.App.4th at p. 826.)

We said of *Irvin* in *Rush,* "Fairly read, the foregoing merely holds that a defendant who steals various items by force or fear, in a continuing transaction, commits but one offense and the loot may not be splintered into separate counts of theft for purposes of multiple conviction." (*People* v. *Rush, supra,* 16 Cal.App.4th at p. 25.) We concluded: "Turning to the present matter, count 1 of the information alleged the robbery of 'Bruce Ray' and count 2 alleged grand theft of a motor vehicle 'the property of Bruce Ray,' both of which occurred on Aug. 27, 1991. The pleading contained no further recitation of a connection between the offenses; however, the evidence at the preliminary hearing and at trial unequivocally established that the automobile was part of the loot stolen in the robbery. Here, the specific language of the pleadings alleged the automobile theft as a lesser, necessarily included offense within the charged robbery because the offenses involved the same victim on the same date. It appears settled that '[a] defendant commits only one robbery no matter how many items he steals from a single victim pursuant to a single plan or intent.' (*People* v. *Brito* (1991) 232 Cal.App.3d 316, 326 [283 Cal.Rptr. 441].)" (*People* v. *Rush, supra,* 16 Cal.App.4th at p. 27; *People* v. *Irvin, supra,* 230 Cal.App.3d at p. 186.)

The Attorney General seeks to uphold the judgment of conviction on the grand theft auto charge as alleged in count 2, by submitting that *People* v. *Rush, supra,* 16 Cal.App.4th 20 (rev. den. Aug. 18, 1993), *People* v. *Gomez,*

*supra*, 2 Cal.App.4th 819 and *People* v. *Irvin, supra*, 230 Cal.App.3d 180 were simply wrongly decided, relying primarily on arguments and cases cited in the dissent in *Rush* and in *Irvin*. We reject the Attorney General's contention because the position advanced in the two dissents is no more credible now than it was at the time *Rush* and *Irvin* were decided.

We conclude it was error to convict on both the greater (robbery) and the specifically pleaded lesser included offense (grand theft auto), and the conviction of the lesser offense must be reversed and count 2 dismissed.

II

CALJIC No. 2.15 PROPERLY GIVEN

■ Appellant contends the giving of CALJIC No. 2.15[1] on the robbery (count 1) charge was error. He argues that the inference from his possession of recently stolen property was not sufficient to show his guilt of robbery because the *only* inference that proof of knowing possession of recently stolen property raises is a defendant's "knowledge of the tainted nature of the property," quoting from *People* v. *Anderson* (1989) 210 Cal.App.3d 414, 421 [258 Cal.Rptr. 482]; that the corroborating evidence supports an inference that he was guilty only of receiving stolen property, not robbery; that CALJIC No. 2.15 violated due process by lessening the prosecution's burden to prove every element of robbery beyond a reasonable doubt and the instruction is misleading as to the burden of proof and conflicts with the reasonable doubt instruction.

Appellant claims CALJIC No. 2.15 is not appropriate in a robbery charge. He says *People* v. *Anderson, supra*, 210 Cal.App.3d 414 upheld the use of CALJIC No. 2.15 only in the context of receiving stolen property charges, and the court did not analyze the instruction's applicability to any other type of crime. Of course, this is true, for the defendant in *Anderson* and in *People* v. *McFarland* (1962) 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449], upon which he also relies, was charged only with receiving stolen property and there was no occasion for discussion of applicability of the instruction to

---

[1]"If you find that a defendant was in conscious possession of recently [stolen] property, the fact of such possession is not by itself sufficient to permit an inference that defendant is guilty of the crime of *robbery/Ct. I*. Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight, and need not by itself be sufficient to warrant an inference of guilt.

"As corroboration, you may consider [the attributes of possession—time, place and manner,] [that the defendant had an opportunity to commit the crime charged,] [the defendant's conduct,] [statements he may have made with reference to the property] and [any other evidence which tends to connect the defendant with the crime charged]." (CALJIC No. 2.15.)

other theft crimes. Thus, appellant seems to think that CALJIC No. 2.15 is appropriate only in a receiving stolen property case because *Anderson* approved its use to show that ". . . proof of knowing possession by a defendant of recently stolen property raises a strong inference of the other element of the crime: the defendant's knowledge of the tainted nature of the property" (*People v. Anderson, supra*, 210 Cal.App.3d at p. 421), and that in the context of a robbery charge, the inference he knew the property was stolen does not implicate him as the perpetrator of the robbery. Appellant is in error.

First, the instruction is appropriate when the crime charged is theft, robbery or knowingly receiving stolen property. " 'It is settled that when a person is shown to be in possession of recently stolen property slight corroborative evidence of other inculpatory circumstances which tend to show guilt supports the conviction of robbery.' (*People v. Sorrentino* (1956) 146 Cal.App.2d 149, 160 [303 P.2d 859].)" (*People v. Mulqueen* (1970) 9 Cal.App.3d 532, 542 [88 Cal.Rptr. 235]; *People v. Lang* (1989) 49 Cal.3d 991, 1024 [264 Cal.Rptr. 386, 782 P.2d 627] [guilt of robbery inferred because of defendant's lie].) In fact, the language of CALJIC No. 2.15 contemplates its use for far more than knowingly receiving stolen property charges, for in the body of the instruction is a blank for insertion of the named charge—in this case, "*robbery/Ct. I*," as inserted. And the use note adds, "This instruction will serve to cover the effect of possession of recently stolen property in robbery, burglary, theft and receiving stolen property." This is supported by the case heavily relied on by appellant, *People v. McFarland, supra*, 58 Cal.2d 748, in which the court said the inference is applicable "whether the crime charged is theft, burglary, or knowingly receiving stolen property. [Citation.]" (*Id.* at p. 755.)

Second, it is not just the inference as to defendant's knowledge that the property was stolen that may be drawn, but in the context of theft crimes other than receiving stolen property, CALJIC No. 2.15 by its very language permits the jury in a proper case to infer the identity of defendant as the one who committed the crime.

█ Appellant's further contention, that the corroborating evidence supported only an inference of guilt of receiving stolen property, not of robbery, also lacks merit. The corroborating evidence tending to prove defendant's guilt need only be slight and need not by itself be sufficient to warrant an inference of guilt. There is sufficient evidence here.

Having stopped defendant for a traffic violation, police saw Stieglitz's wallet in plain sight on the floorboard of the Cadillac and asked defendant to

whom it belonged; defendant said he did not know. The jury reasonably could have concluded his denial was false since it was unlikely that defendant would fail to look at a wallet in plain view on the floor of a car he owned and was driving. The jury well could have found that defendant willfully told a falsehood because he wanted to disassociate himself from the fruits of his robbery of Stieglitz. (See *People* v. *Lang, supra,* 49 Cal.3d at p. 1024.) Four days after the robbery, defendant was found in possession of ten pieces of jewelry stolen from Stieglitz, eight of which he was wearing—three rings, two necklaces, a watch, a bracelet and an earring; two more rings were in the glove compartment of his Cadillac. The jury reasonably could infer from these attributes of possession that defendant would not have bought that much stolen jewelry on the street, but got it from Stieglitz, whom he had robbed. Further, this jewelry was found on defendant in the same Cadillac, owned and driven by him, in which Stieglitz's stolen wallet was found. While Stieglitz was unsure whether the robber was in court inasmuch as defendant looked different at trial because he had longer hair, he did identify defendant from a six-person photo lineup five days after the robbery when defendant's appearance was fresh in his mind; and at the preliminary hearing two weeks later, he had "absolutely no doubt" defendant was the person who robbed him of his keys, wallet, jewelry and car. Within an hour after he robbed Stieglitz, friends of defendant received telephone calls from him from the cellular telephone in Stieglitz's Acura, in the trunk of which was the jewelry, some of which four days later adorned defendant's person. Finally, Gregory James, who was with defendant in the Cadillac, told detectives defendant told him he had "done a jack [street robbery] and gotten a lot of jewelry" and dumped the Acura down the street four blocks from where he (defendant) stayed. While James testified he did not tell the detectives about defendant, the jury reasonably could believe from the evidence that his denial was motivated by fear of gang retaliation, and his statements to police were true.

The additional evidence provided ample corroboration for the inference that the circumstances of defendant's possession of recently stolen property demonstrated he was the person who robbed Stieglitz.

■ Appellant's further claim that CALJIC No. 2.15 violated due process by lessening the prosecutor's burden of proving every element of robbery beyond a reasonable doubt is without substance. The instruction creates only a permissive inference, one the jury could either credit or reject "based on its evaluation of the evidence, and therefore does not relieve the People of any burden of establishing guilt beyond a reasonable doubt. (See, e.g., *People* v. *Roder* (1983) 33 Cal.3d 491, 497-498 [189 Cal.Rptr. 501, 658 P.2d 1302].)" (*People* v. *Anderson, supra,* 210 Cal.App.3d at p. 427.) A permissive inference does not shift the prosecution's burden of proof, and violates due

process "only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury." (*Francis* v. *Franklin* (1985) 471 U.S. 307, 314-315 [85 L.Ed.2d 344, 353-354, 105 S.Ct. 1965]; *Ulster County Court* v. *Allen* (1979) 442 U.S. 140, 157-163 [60 L.Ed.2d 777, 792-796, 99 S.Ct. 2213]; *People* v. *Ashmus* (1991) 54 Cal.3d 932, 977 [2 Cal.Rptr.2d 112, 820 P.2d 214].) The circumstances of defendant's possession of Stieglitz's jewelry and wallet strongly supported an inference that it was he who robbed Stieglitz. Given the foregoing, we cannot here find CALJIC No. 2.15 conflicts with the reasonable doubt instruction. (*Ulster County Court* v. *Allen, supra,* 442 U.S. at p. 157 [60 L.Ed.2d at pp. 792-793]; *People* v. *Anderson, supra,* 210 Cal.App.3d at p. 427.) Even without CALJIC No. 2.15, defendant's possession, four days after the robbery, of the ten pieces of jewelry and Stieglitz's wallet; his false statement about the wallet; and his admission to Gregory James constituted circumstantial evidence defendant was guilty of robbery. (*People* v. *Roder, supra,* 33 Cal.3d at p. 506.)

## III

### PRESENTENCE CREDIT

Defendant was sentenced to the middle term of three years on count 1, plus four years consecutive for the firearm-use enhancement, for a total term of seven years, and three years on count 2, which sentence was stayed pursuant to Penal Code section 654. He was also given total presentence credit of 262 days, consisting of 175 actual days and 87 good-time days. Appellant contends, and the Attorney General concedes he is entitled to four additional days of presentence credit. He was arrested on October 23, 1991, and sentenced on April 17, 1992; thus he served 178 actual days, and he is entitled to an additional 88 good conduct days (Pen. Code, § 4019, subd. (f)), making a total of presentence credit of 266 days.

### DISPOSITION

The conviction of grand theft of an automobile with the use of a firearm on count 2 is reversed, and the count is dismissed. The judgment is corrected to reflect defendant's entitlement to a total of 266 days of presentence credit. In all other respects, the amended judgment is affirmed.

Johnson, J., concurred.

**WOODS (Fred), J.,** Dissenting.—The lesser included offense doctrine, like arithmetic, is simple. It, just like arithmetic, has nothing to do with facts.

In arithmetic it does not matter whether you are counting apples, oranges, or kumquats. Two plus two equals four.

It is the same with the lesser included offense doctrine. It doesn't matter whether a murder was with a gun or a pillow, whether there was one victim or a hundred and one victims. Murder does not include drunk driving because the elements of murder do not include the elements of drunk driving. Murder does not include theft of artichokes because the elements of murder do not include the elements of theft of artichokes.

Sometimes my colleagues remember this. They did so as recently as November 22, 1993. (*In re Daniel R.* (1993) 20 Cal.App.4th 239 [24 Cal.Rptr.2d 414].) In *Daniel R.* the question was whether assault with a deadly weapon (Pen. Code, § 245; statutory references, unless otherwise noted, are to the Penal Code) was an included offense of discharging a firearm at an occupied vehicle (§ 246).

In answering the question Justice Johnson stated, and Justice Lillie agreed, that "[w]e need not decide whether defendant's *conduct* satisfied the elements of an assault with a deadly weapon." (Italics added.) (20 Cal.App.4th at p. 243.) That is, the *facts* are irrelevant. How *this* defendant committed *this* offense (§ 246) has nothing to do with the lesser included offense doctrine. Justice Johnson stated, and Justice Lillie agreed, that ". . . our task is to determine whether *in the abstract* one can willfully and maliciously discharge a firearm at an occupied vehicle without also, and necessarily, committing an assault with a deadly weapon." (20 Cal.App.4th at p. 243, italics added.)

Sometimes my colleagues do not remember this. They forgot it in *People v. Rush* (1993) 16 Cal.App.4th 20 [20 Cal.Rptr.2d 15] (see dissent, *People v. Rush, supra,* 16 Cal.App.4th 20, 27-38). They forgot it again today.

If there is some principle which can reconcile *In re Daniel R.* with the instant majority opinion and with *Rush,* it escapes me. I respectfully suggest it also escapes—and befuddles—every trial court in the Second Appellate District.

Appellant's petition for review by the Supreme Court was denied May 11, 1994. Mosk, J., was of the opinion that the petition should be granted.