Filed 12/4/13  In re Trevon M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re TREVON M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F066539 |
| Plaintiff and Respondent, | (Super. Ct. No. JL003509) |
| v. | |
| TREVON M., | **OPINION** |
| Defendant and Appellant. | |

### THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  David W. Moranda, Judge.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Sarah J. Jacobs, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Levy, Acting P.J., Detjen, J. and Peña, J.

# INTRODUCTION

On appeal following adjudication of a Welfare and Institutions Code section 602, subdivision (a) petition, Trevon M. contends there is insufficient credible evidence to sustain the juvenile court's finding that he committed residential burglary.  We will affirm.

# PROCEDURAL BACKGROUND

In a petition filed November 28, 2012, the Merced County District Attorney alleged Trevon committed the following violations:  count 1—first degree burglary (Pen. Code,[1] § 459); count 2—receiving stolen property (§ 496, subd. (a)); and count 3—violating a prior court order, juvenile probation (Welf. & Inst. Code, § 777, subd. (a)).[2] Trevon denied the allegations.

Following contested proceedings held December 20 and 21, 2012, the juvenile court found counts 1, 2, and 3 as alleged in the petition to be true beyond a reasonable doubt.

At disposition on January 8, 2013, the court ordered, inter alia, that Trevon be committed to Bear Creek Academy's long-term program for a period not to exceed one year.  This appeal followed.

# FACTUAL BACKGROUND

On November 26, 2012, Juan Penate left his home in Merced to run errands.  He ensured all doors and windows were closed and locked before he left that morning as he had been the victim of a burglary just a month or so prior.  Forty-five minutes to an hour later, he returned.  Penate entered through the front door and then heard a "noise and stumbling."  As he was walking toward the kitchen, two or three individuals jumped out

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

[2]Previous petitions were noted to have been filed on March 2, 2010, July 14, 2010, January 19, 2011, June 7, 2011, November 15, 2011, and September 10, 2012.  The probation officer's report noted the following:  "This is the minor's eleventh appearance before the court and twenty second referral to this department."

and Penate was pushed down. As he got up, Penate saw the individuals running out of the house and into his backyard. Penate testified that he believed Trevon was the individual who pushed him down because "[h]e was the last one I saw running," and Penate could not identify the others because all he "saw was their backs." He was not certain however.

Penate called 911 as he followed the individuals outside. His dogs were barking in the backyard and he looked over the fence into the yard of the home next door. Penate made eye contact with Trevon as Trevon was about to enter a side garage door of the vacant home next door. Penate yelled at him. Trevon disappeared through the door into the garage. Penate expected the individuals to exit the house next door through the front, however, he heard noises that led him to believe they were jumping the fence behind the home. The police arrived in response to his 911 call about three to four minutes later.

Penate's home had been ransacked. He identified a number of items missing from the home, including cell phones, jewelry, and a PlayStation 2. He also noted other property had been moved from one location to another within the home. A bathroom window was open and its screen removed.

Detective Owen Johnson of the Merced Police Department was monitoring radio traffic on November 26, 2012, and heard the call about a possible residential burglary in progress with a subject running from the scene. Johnson responded to the address and received a description of the suspect from Officer Peter Lee. That description matched the description of a young man Johnson had previously arrested for residential burglary, Trevon M., who lived nearby.

After confirming Trevon was still on probation, Johnson and his partner Detective Rodriguez responded to the minor's residence. As they approached the front door, Johnson noted it was standing open about two to three inches. Johnson knocked and announced their presence by shouting, "Merced Police Department, hello, hello, Merced Police Department" and "Trevon, are you in there, Trevon?" After waiting a few

moments and receiving no response, Johnson pushed the door open and he and Rodriguez entered the home.

After clearing the kitchen area past the living room, the detectives proceeded down a hallway, passing a few bedrooms. In the third bedroom, Johnson encountered Trevon's stepfather, sound asleep. After Mr. M. awoke and Johnson identified himself and explained they were looking for Trevon, the group headed back toward the front of the home. In a front bedroom, Johnson found Trevon hiding in a closet. He was crouched down into a ball; when the closet door was opened, Trevon lunged out and ran to the other side of the room. Eventually he was detained.

In the same room where Trevon was hiding, various belongings of Penate were found. They included cell phones, rings, coins, and game controllers. Trevon was then arrested.

## DISCUSSION

Trevon argues the evidence was insufficient to sustain the juvenile court's true finding that he committed the crime of residential burglary because there was no evidence he had been in the victim's home. The victim did not observe Trevon to be one of the individuals he encountered when he returned home. Rather, the victim only saw him at the property located next door. As a result, Trevon maintains the juvenile court's finding is insufficient to establish that he entered the residence with the intent to commit a theft or felony therein.

### The Applicable Legal Standards

The crime of burglary is defined, in pertinent part, as follows: "Every person who enters any house … with intent to commit grand or petit larceny or any felony is guilty of burglary." (§ 459.) The crime of burglary and the identification of the perpetrator are often established entirely by circumstantial evidence. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329; see also *People v. Hinson* (1969) 269 Cal.App.2d 573, 577-579 [substantial evidence defendant committed a burglary where witness identified him as the

man she had seen crouching in front of broken store window and then fleeing from scene after he noticed her].)

When an appeal challenges the sufficiency of the evidence to support a juvenile court judgment sustaining the allegations of a Welfare and Institutions Code section 602 petition, we must apply the same standard of review applicable to any claim by a criminal defendant challenging the sufficiency of the evidence to support a judgment of conviction on appeal.

> "Under this standard, the critical inquiry is 'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] An appellate court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] [¶] In reviewing the evidence adduced at trial, our perspective must favor the judgment. [Citations.] '… The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact; it is not whether guilt is established beyond a reasonable doubt. [Citation.]'" (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1371-1372.)

> "'It is axiomatic that an appellate court defers to the trier of fact on such determinations, and has no power to judge the effect or value of, or to weigh the evidence; to consider the credibility of witnesses; or to resolve conflicts in, or make inferences or deductions from the evidence. We review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses. [Citation.] "Issues of fact and credibility are questions for the trial court." [Citations.] It is not an appellate court's function, in short, to redetermine the facts. [Citation.] Under the substantial evidence rule, we 'must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact.' [Citation.]" (*In re S.A.* (2010) 182 Cal.App.4th 1128, 1140.)

> "'"[T]he standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.] 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. "'If the

5.

circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" [Citations.]' [Citation.] '"Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt."'" [Citation.]' [Citation.]" (*People v. Jones* (2013) 57 Cal.4th 899, 960-961.)

### *The Juvenile Court's Ruling*

After considering the arguments of counsel, the juvenile court found as follows:

"[THE COURT:] … I do find that as to count 1 the burglary in the first degree, … I do find that the minor is guilty of that, find that offense is true, find it was proved beyond a reasonable doubt.

"The close proximity of the items, the time which I think was only five minutes is what Detective Johnson said, the identification by the victim who I thought was an excellent witness, was very good, so I do find count 1 is true."

Later, the court stated, "Truly beyond all doubt I find that he committed the burglary."

### *Our Analysis*

Juan Penate's testimony regarding the individuals he encountered in his home amounts to circumstantial evidence that Trevon was one of those individuals.

While it is true Penate was not certain Trevon was the individual who knocked him down inside the house before fleeing, Penate testified on direct examination that he believed Trevon to be one of those individuals because "[h]e was the last one that [Penate] saw running" away. Penate got up to follow the individuals outside, calling the police as he did so. Once in his backyard, where his dogs were barking, Penate looked over the fence separating his home from the vacant home next door. It was then that he made eye contact with Trevon who was about to enter a side door of that home's garage. On cross-examination, Penate admitted he did not see Trevon leave his home and travel to the house next door, but he did testify this series of events happened within "[f]ive to six seconds" and "[i]t was all very fast." The police arrived a few moments later.

Although the evidence that Trevon was inside Penate's residence is circumstantial because Penate was not certain of his identification until he made eye contact with him,

only a very brief period of time was at issue. In other words, from the time Penate was surprised by individuals confronting him inside his home and knocking him down, to the time he looked over the fence separating his home from the home next door and making eye contact with Trevon, Penate estimated five to six seconds had elapsed. Therefore, even if Penate's testimony on direct examination cannot be said to place Trevon inside his home, his testimony on both direct and cross-examination places Trevon in the neighboring yard mere seconds later. Trevon is then seen entering the garage of that home, and Penate heard individuals "jumping the fence" behind the home. When a person is shown to be in possession of recently stolen property, only slight evidence of corroboration is sufficient to support the conviction for burglary. (See *People v. Gamble* (1994) 22 Cal.App.4th 446, 453.) It is therefore reasonable to infer Trevon was among the individuals who had been inside the Penate residence, and he was following the other individuals as they made their escape.

The trial court found the victim's testimony to be credible and we defer to those findings. (*In re S.A.*, *supra*, 182 Cal.App.4th at p. 1140.) Moreover, while the evidence concerning Trevon's presence inside the victim's home was circumstantial, it was of such value that it reasonably justified the juvenile court's findings. (*People v. Jones*, *supra*, 57 Cal.4th at p. 961.) Therefore, considering all of the evidence, and viewing it in the light most favorable to the prosecution, we find a rational trier of fact could have found the essential elements of the crime of residential burglary were met. (*In re Ryan N.*, *supra*, 92 Cal.App.4th at pp. 1371-1372.) This court concludes there is sufficient and substantial evidence to support the juvenile court's true finding as to the crime of burglary.

## DISPOSITION

The judgment is affirmed.

7.