Filed 6/28/16  P. v. Kim CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050928 |
| v. | (Super. Ct. No. 12NF0672) |
| MYUNG JAE KIM, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy, Judge.  Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Susan Elizabeth Miller, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted Myung Jae Kim of assault with a firearm (Pen. Code, § 245, subd. (a)(2) [count 2], all statutory references are to this code), false imprisonment of a hostage (§ 210.5 [count 3]), assault with a firearm on a peace officer (§ 245, subd. (d)(l) [counts 4-6]), possession of a destructive device in a public place (§ 18715, subd. (a)(2) [count 7]), possession of a destructive device for intimidation or injury (§ 18740 [count 8], and criminal threats (§ 422 [count 9]). The jury also found Kim personally used a deadly weapon (§ 12022, subd. (b)(l)) during the commission of false imprisonment (count 3) and personally used a firearm (§ 12022.5, subd. (a)) during the commission of criminal threats (count 9). Kim contends there is insufficient evidence to sustain the conviction for false imprisonment of a hostage. For the reasons expressed below, we affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

In 2006, Michelle Kwon served as branch manager of Hanmi Bank when Kim and his wife opened an account and rented a safe deposit box. Kwon knew the Kims because their children previously attended school together and Kwon was once a customer of Kim's water purifying business.

In March 2007, Kim's wife claimed approximately $240,000 went missing from the safe deposit box. A bank safety deposit box requires two keys to open: the bank retains one key and the owner has the second key. Kim reported the matter to the police and others, and contacted Kwon several times over the next five years to inquire about the investigation. The bank investigated, but determined employees had followed proper procedures and nothing abnormal occurred on the bank's part.

In September 2011, Kwon left Hanmi Bank for Saehan Bank in Buena Park. On March 1, 2012, around 9:30 a.m., Kim phoned Kwon at Saehan Bank. He again asked about his missing money. Kwon stated they had already "talked about this" and there was nothing more she could do.

2

Less than two hours later, Kim came to Saehan Bank and asked to speak with Kwon. He sat in her office holding a white box. Kwon asked what was in the box, and he took out a gun and shotgun shells. He put a knife, a lighter, an audio recorder and other item on a table. At some point, Kwon also saw pipe bombs. Kim ordered the other five bank employees to leave the building.

Police officers and FBI bomb technicians soon arrived, as did a police helicopter, robots, and armored vehicles. SWAT members positioned themselves nearby and police snipers set up across the street from the bank.

Kim held Kwon hostage for the next several hours. When Kim asked about his money, Kwon repeated the bank did not take his money. She suggested he ask his wife what happened, but Kim asserted his wife did not take the money. Kim explained the missing money was for his daughter's education, and he wished to speak with Hanmi Bank's president to finally receive answers about the missing money. He repeatedly told Kwon he was going to kill himself, and called his brother and wife to say farewell.

Kim directed Kwon to call Hanmi Bank officials to inquire about his money. Kim explained he would hold Kwon at the bank until he spoke with the president and learned what happened to the money. Kim spoke with Hanmi Bank's vice-president, who said he would look into the matter and call him back.

Saehan Bank's president suggested they pay Kim the amount of his alleged loss if he agreed to release Kwon, but Kim declined Saehan Bank's offer.

During the ordeal, Kim allowed Kwon to retrieve protein powder from the break room and use the restroom. He asked the police to get Kwon lunch because she was diabetic.

The police phoned and stated there was food at the front door. Kwon, followed by Kim, walked to the door to retrieve the food. Kim told Kwon not to "do anything" because he was following her. He had threatened to shoot her in the legs. Snipers saw Kim by the front door and fired, but missed. SWAT officers advanced. Kim

raised his shotgun at the officers, who opened fire, shattering the glass front doors. Kim fired his shotgun at the officers. One of the officers fired at Kim and pulled Kwon from the bank. Kim was struck by the gunfire. Three officers suffered minor injuries caused by bullet fragments or shrapnel.

Kim had a pipe bomb in his back pocket. Investigators found additional pipe bombs in the bank, a newspaper article concerning Kwon inside Kim's van, and a tool box containing a portion of a shotgun barrel, empty shotgun casings and pellets, PVC piping, and a note containing Kwon's name at Kim's business.

Kim testified about the loss of his money, which he believed bank employees had stolen. He filed a police report, and spoke to an attorney and others seeking redress, but the investigation went nowhere. He confronted Kwon because he was angry about lies from Hanmi Bank officials. He did not intend to use the shotgun or pipe bombs to hurt or kill anyone, but planned to display the gun and explosives hoping Kwon and others would finally tell him the truth about his money. Kim brought a tape recorder to record his conversations and present them to a newspaper. He followed Kwon to the door because he ordered food for her. He claimed he cocked his gun because he believed police were watching and he did not want them entering the building until he learned what happened to his money. He denied threatening to shoot Kwon's legs.

II

DISCUSSION

*Evidence Sufficiently Proved Kim Falsely Imprisoned Kwon to Protect Himself from Imminent Arrest*

Kim challenges the sufficiency of the evidence to support his conviction for falsely imprisoning Kwon for the purpose of protecting himself from imminent arrest. The test for sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

4

essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Johnson* (1980) 26 Cal.3d 557, 576-578 (*Johnson*).) The reviewing court reviews the whole record and evidence in the light most favorable to the judgment below and determines whether the record contains substantial evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. (*Johnson, supra,* at p. 562; see *People v. Sanchez* (1995) 12 Cal.4th 1, 32, disproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22 [standard of review is same where prosecution relies mainly on circumstantial evidence].) The evidence must be of ponderable legal significance, reasonable in nature, credible and of solid value. (*People v. Albillar* (2010) 51 Cal.4th 47, 60; *People v. Bassett* (1968) 69 Cal.2d 122, 139 [circumstances reasonably reconcilable with a not guilty finding does not warrant a reversal if substantial evidence supports the judgment].)

Section 210.5 provides, "Every person who commits the offense of false imprisonment, as defined in Section 236, against a person for purposes of protection from arrest, which substantially increases the risk of harm to the victim, or for purposes of using the person as a shield is punishable by imprisonment pursuant to subdivision (h) of Section 1170 for three, five, or eight years."

"False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.) It is a misdemeanor unless it is "effected by violence, menace, fraud, or deceit," in which case it is a felony. (§ 237.) False imprisonment of a hostage as defined by section 210.5 results in greater punishment where the false imprisonment is committed "'for purposes of protection from arrest, which substantially increases the risk of harm to the victim, or for purposes of using the person as a shield. . . .'" (See *People v. Gomez* (1992) 2 Cal.App.4th 819, 825, disapproved on other grounds in *People v. Lewis* (2008) 43 Cal.4th 519, fn. 29; CALCRIM No. 1241 [conviction requires finding defendant "faced a threat or risk of imminent arrest" and that he "intended to protect himself against that threat of imminent arrest by restraining the other person"].) The

5

elements of false imprisonment of a hostage are contained in CALCRIM No. 1241: "To prove that the defendant is guilty of this crime, the People must prove that: 1. The defendant faced a threat or risk of imminent arrest; 2. The defendant (restrained[,]/ [or] confined[,]/ [or] detained) another person by force or by a threat to use force; 3. The defendant intended to protect (himself/herself) against the threat of imminent arrest by restraining the other person; 4. The defendant made the other person stay or go somewhere against that person's will; AND 5. The defendant either substantially increased the risk of [physical or psychological] harm to the (restrained[,]/ [or] confined[,]/ [or] detained) person or intended to use that person as a shield."

Kim contends the prosecution presented no evidence he "intended to hold Kwon hostage for the specific purpose of avoiding arrest. To the contrary, substantial evidence was presented he required her presence at the bank in order to insure and facilitate his telephone conversation with the president of Hanmi Bank." He planned to hold Kwon at the bank until he spoke with the president and discover what happened to his missing money. "While [he] made the ill-advised decision to hold Kwon at the bank, he did so intending to discover the truth about his missing funds. He did not do so 'in order to prevent his imminent arrest by law enforcement officers.'"

The jury reasonably could infer Kim restrained Kwon to protect himself from imminent arrest. The record reflects Kim had spoken with Hanmi Bank's vice-president about the loss of his money and was awaiting a return call. He followed Kwon to the door with his gun cocked to check on the food. Kim knew law enforcement had surrounded the building and brought his weapon because he believed police snipers were likely watching and he did not want them entering the building to arrest him before he received answers about his missing money from Hanmi Bank's president. The jury reasonably could conclude Kim used Kwon as leverage to prevent law enforcement from entering the building and arresting him before he received the return call from Hanmi Bank's president. He wanted answers about his missing money, and made it clear he did

6

not want to be arrested before the matter was resolved.[1] The prosecution presented substantial evidence Kim faced a threat or risk of imminent arrest, he detained Kwon by force or a threat to use force, he intended to protect himself against the threat of imminent arrest by restraining Kwon, he made her stay against her will, and he substantially increased the risk of physical or psychological harm to Kwon.

## III

### DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


IKOLA, J.

---

[1] Kwon told officers he would not release Kwon because he saw "her as the leader in this. I have to. How can I let her go? If I don't see this resolved, I will cut her two legs and then I will die one way or another." Officers asked Kim to release Kwon, and he responded, "Sorry. Don't come in. . . . I will kill myself, so don't come in. This woman can get hurt." He stated he would hold Kwon and had "not talked to the president of the bank yet."

7